**UNITED STATES of America,
Plaintiff,**

v.

**COLEMAN CAPITAL CORPORATION,
an Illinois corporation, Defendant.**

**No. 68 C 568.**

United States District Court
N. D. Illinois, E. D.
Jan. 21, 1969.

Thomas A. Foran, U. S. Atty., Milton P. Shore, Attorney, Small Business Administration, Washington, D. C., for plaintiff.

John M. Janewicz, Gunther & Choka, Chicago, Ill., Leon C. Baker, New York City, of counsel, for defendant.

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ROBSON, District Judge.

The plaintiff has moved for summary judgment. This court is of the opinion the motion should be granted.

The defendant, an Illinois corporation, is licensed by the Small Business Administration ("S.B.A.") pursuant to the Small Business Investment Act of 1958 ("Act"), 15 U.S.C. § 661 et seq. The Act provides financial assistance to help meet the initial capital requirements of newly-licensed investment companies and for expansion of their operations. The licensed investment companies, such as the defendant, then make loans and extend long-term credit to small business concerns. Under this program, the federal government does not invest directly in small business concerns. However, the S.B.A. is empowered to regulate transactions between its licensed investment companies and small business concerns. 15 U.S.C. §§ 684, 685 and 686; 1958 U.S. Code Cong. and Adm.News, p. 3678.

During the years 1962 through 1965, the S.B.A. purchased four subordinated debentures totaling $350,000 from the defendant. During the same period, the S.B.A. also made four loans to the defendant totaling $350,000 and evidenced by notes. The plaintiff now seeks an adjudication that the defendant has violated the Act and the S.B.A. regulations, in order that the S.B.A. may revoke the defendant's license pursuant to 15 U.S.C. § 687(d). The debentures and notes provide that in the event of a violation of the Act or the regulations, the indebtedness of a licensee immediately becomes due and payable.[1] Relying on these provisions, the plaintiff also seeks a money judgment for the unpaid balance of the defendant's indebtedness.

The plaintiff alleges and the defendant admits making the following loans: Justrite Manufacturing Corporation ($150,000 on December 21, 1966); Chicago Etching Corporation ($150,000 on February 21, 1967); and Copy-Rite Corporation ($125,000 on April 26, 1966).[2] The plaintiff claims that the Justrite and Chicago Etching loans each constitute violations of the Act and the regulations. It is further asserted by the plaintiff that Justrite, Chicago Etching, and Copy-Rite are affiliated concerns within the purview of the regulations, so that the aggregate amount of the loans to these firms violated the Act and the regulations.

The Act limits the aggregate amount of assistance a licensee may make to any single enterprise to 20 per cent of the licensee's combined capital and surplus unless S.B.A. approval has been obtained. 15 U.S.C. § 686.[3] The plaintiff

---

1. Since the commencement of this action, one of the loans, in the amount of $150,000, has matured and has been paid in full, thus reducing the amount of indebtedness from $700,000 to $550,000.

2. The loans were entered for the principal amounts alleged by the Government in a financial statement filed with the S.B.A. and admitted by the defendant. In its pleadings, however, the defendant has sought to reduce the principal amount to reflect prepaid interest.

3. The plaintiff has assumed that the 1967 amendment to the Act is applicable. The effective date for the amendment is January 1, 1968, and, therefore, it is not applicable to the transactions in question. See annotation at 15 U.S.C.A. § 681 (1967 Supp.); ANA Small Business Investments, Inc. v. Small Business Administration, 391 F.2d 739, 746 (9th Cir. 1968). The statute effective during the relevant period set 20 per cent of a licensee's combined capital and surplus as the basis for

contends that the defendant's combined paid-in capital and paid-in surplus was $721,950 during the relevant period,[4] so that $144,390 was the maximum amount the defendant could loan to any single enterprise without S.B.A. approval.[5] Both the Justrite and Chicago Etching loans exceeded the loan limit. The defendant clearly violated the Act and the regulations in these two transactions.

The Act limits the maximum loan a licensee may make to any "single enterprise." 15 U.S.C. § 686. For the purpose of receiving a S.B.A. loan, the term "single enterprise" may mean several small business concerns if they are affiliated. 13 C.F.R. § 121.3–10. The regulations define "affiliated concerns" to include situations where a third party controls or has the power to control more than one concern. 13 C.F.R. § 121.3–2(a). It is alleged by the plaintiff and admitted by the defendant that Charles L. Barancik was the controlling stockholder and an executive officer of Justrite, Chicago Etching, and Copy-Rite when each of the loans in question was made. Under the terms of the Act and the regulations, this identity of control means that these three small business concerns constitute a "single enterprise." The loans made to these concerns, aggregating an amount well in excess of 20 per cent of the defendant's combined capital and surplus, were made without S.B.A. approval. Therefore, the defendant clearly violated the Act and the regulations with respect to these three transactions.

The plaintiff asserts and the defendant admits that on March 1, 1966, it made a loan to Greenhouse Garden Center, Inc. During this time, an officer of the borrowing concern was the brother-in-law of Gloria Baker, an officer and director of the defendant. This loan is clearly a violation of the conflicts of interest provision of the regulations, which includes a brother-in-law within the definition of "related persons." 13 C.F.R. § 107.716(b) (5). The defendant alleges that its loan to Greenhouse Garden Center, Inc. was disclosed to the S.B.A. in its financial statement. By remaining silent and not voicing an objection to this loan for eighteen months after disclosure, it is the defendant's contention that the S.B.A. "approved" the transaction. However, there has been no factual showing that the S.B.A. had notice that the borrowing concern was connected with the licensee in a manner violative of the Act and the regulations. Furthermore, even if employees of the S.B.A. had such knowledge and the defendant was misled by non-action on the part of the S.B.A., neither principles of estoppel nor any other equitable consideration entitle the defendant to immunity from statutory and regulatory proscriptions. ANA Small Business Investments, Inc. v. Small Business Administration, 391 F. 2d 739, 743 (9th Cir. 1968); Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947). When this suit was filed on March 28, 1968, the balances due on the Justrite

calculation of the maximum loan permissible, while the 1967 amendment restricted the determinate amount to 20 per cent of a licensee's combined *paid-in* capital and *paid-in* surplus.

4. The defendant contends that its capital was $77,000 and its surplus was $294,950. However, it also is admitted that the defendant had outstanding subordinated debentures payable to the S.B.A. totaling $350,000. Under the regulations, subordinated debentures are includible in the licensee's capital and surplus for the purpose of determining loan maximums. 13 C.F.R. 107.708(a). Therefore, there is

no real factual dispute regarding the defendant's capital structure and the resulting loan limit.

5. Since the defendant's admitted financial report for the relevant period reflects that earned surplus (or retained earnings) totals only $3,922.42, the ultimate loan maximum for the period in question is not significantly affected by application of the original statute, which calls for the inclusion of earned surplus in determining the loan limit. This court finds that the defendant's maximum loan limit was $145,174.48.

and Chicago Etching loans were below the loan limit and the Greenhouse Garden Center, Inc. loan was paid in full. The defendant claims that any alleged violations, therefore, were corrected before this action was brought and that the S.B.A. no longer has any cause to complain of these transactions. A reading of the applicable statute, 15 U.S.C. § 687(d), does not support the defendant's conclusion. Violations of the Act are not "cured" because they are not detected and prosecuted before the violation ceases. The Act unequivocally states that upon violation or non-compliance with any provision of the Act or the regulations, a licensee forfeits all of its rights, privileges, and franchises. While an adjudication by a court is required to determine whether in fact a violation or non-compliance took place, the statute does not restrict the court's consideration to a question whether a violation or non-compliance is presently occurring. 15 U.S.C. § 687(d). The defendant's interpretation of the statute, which this court cannot allow, would permit a licensee to disregard the Act and the regulations with impunity, so long as violations are "cured" by the time the S.B.A. discovers them.

The plaintiff alleges and the defendant admits that on March 19, 1964, the defendant loaned $44,000 to Polaris Drilling Company, $10,949.50 of which was used to pay off encumbrances against two homes or dwellings of the president of the borrowing concern. The Act specifies that loans made by licensees to small business concerns shall be used for the sound financing, growth, modernization, and expansion of the concerns. 15 U.S.C. § 685(a). The Polaris financing clearly violated the Act, and the defendant's assertion that the loan was repaid long before this action was brought is irrelevant, as indicated above.

The plaintiff alleges and the defendant admits that the president of the defendant, Leon C. Baker, made personal loans to Manetti, Inc. for $35,000 and to Chez Coiffeurs Salons, Inc. for an unstated amount. On April 1, 1963, Mr. Baker contributed the note evidencing the Manetti loan to the defendant. He then applied to the S.B.A. for "Section 302" or matching funds under 15 U.S.C. § 682. The S.B.A. refused to match the funds represented by this transaction. It is admitted that the S.B.A. notified Mr. Baker by a letter dated February 7, 1964, that the S.B.A. would match funds only with that portion of paid-in capital and surplus derived from cash, eligible government securities, and stock dividends capitalizing retained earnings. Subsequently, Mr. Baker sold the note to the defendant for $35,000 in cash and then contributed the cash as additional paid-in capital and surplus. The S.B.A. was not aware of this transaction when it matched Section 302 funds with the defendant for this amount. On May 8, 1964, Mr. Baker similarly sold the Chez Coiffeurs Salons' note to the defendant and contributed the cash proceeds to the defendant as additional paid-in capital and surplus. Again, the S.B.A. was not aware of this transaction when, upon the defendant's application, it made funds available in reliance upon the cash "contribution." Both the Manetti and Chez Coiffeur Salons' transactions violated the Act. The defendant, by means of these sham transactions, financed personal loans which were not for the sound financing, growth, expansion or modernization of the borrowing concerns. 15 U.S.C. § 685(a).

The affidavit of Leon C. Baker, filed by the defendant in opposition to this motion for summary judgment, is replete with arguments, opinions and conclusions of the affiant concerning the validity of a number of S.B.A. regulations. It has been well established that S.B.A. regulations have the force and effect of law. Hernstadt v. Programs for Television, Inc., 36 Misc.2d 628, 232 N.Y.S.2d 683 (1962). A licensee under a scheme of federal regulation acquires no vested rights which immunize it from reasonable regulation by an administrative agency.

ANA Small Business Investments, Inc. v. Small Business Administration, *supra*. Furthermore, arguments concerning the law or merits of a case in affidavits responding to a motion for summary judgment may be disregarded by the trial court. Bensen v. Jackson, 238 F.Supp. 309 (E.D.Pa.1965). Under Rule 56(e), Federal Rules of Civil Procedure, the only finding necessary is that there is no genuine issue as to any material fact. Bohn Aluminum & Brass Corporation v. Storm King Corporation, 303 F.2d 425 (6th Cir. 1962).

In his affidavit, the president of the defendant contends that this suit was brought in order to punish the defendant for opposing legislation proposed by the S.B.A. and in retaliation for old animosities. These allegations are conclusionary and unsupported by specific facts. Although the defendant has presented a sworn statement attesting to its past friction with the S.B.A., a contention that this suit was brought for any reason other than the defendant's non-compliance with the Act and the regulations is purely speculative. The affidavit does not present any genuine issues of fact and is therefore inadequate to defeat the motion for summary judgment. Turner v. Lundquist, 377 F.2d 44 (9th Cir. 1967); Scarboro v. Universal C. I. T. Credit Corp., 364 F.2d 10 (5th Cir. 1966); Wagoner v. Mountain Savings & Loan Association, 311 F.2d 403 (10th Cir. 1962).

The plaintiff has alleged and the defendant has admitted conduct that clearly violated the Act and the regulations. There is no factual dispute regarding the financing transactions in question. The plaintiff is entitled to a summary judgment as a matter of law, since there is no genuine issue as to any material fact. Carter v. Williams, 361 F.2d 189 (7th Cir. 1966); Bumgarner v. Joe Brown Company, 376 F.2d 749 (10th Cir. 1967).

It is therefore ordered that summary judgment be and it is hereby rendered for the plaintiff. It is further ordered that judgment be and it is hereby entered for the plaintiff in the amount of $550,000 and costs, and the cause is hereby dismissed.