**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**MARITIME INVESTMENT CORP.,**
**Defendant-Appellee.**

No. 71–3079
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Aug. 23, 1972.

* Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409.

Robert W. Rust, U. S. Atty., Clemens Hagglund, Asst. U. S. Atty., Miami, Fla., Margaret S. Rogers, Atty., Small Business Administration, Washington, D. C., Walter H. Fleischer, William Kanter, Ronald R. Glancz, Attys., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Guy B. Bailey, Miami, Fla., for defendant-appellee.

Before WISDOM, GODBOLD and RONEY, Circuit Judges.

GODBOLD, Circuit Judge:

In February 1968 the United States sued Maritime Investment Company, a small business investment company (SBIC) licensed by the Small Business Administration,[1] seeking an injunction, appointment of a receiver, a money judgment, forfeiture of Maritime's license, and other relief. These remedies are available against an SBIC which has violated the Act or SBA regulations.[2] The District Court denied relief on the ground that the government had failed to discharge its burden of proving that Maritime's capital was impaired, which was the major violation charged. The court misconceived the burden of proof, necessitating reversal.

SBIC's are required by regulation to file each fiscal year an unaudited financial report for the six-month period ending September 30 and an audited report for the fiscal year ending March 31. Pursuant thereto Maritime filed for the six-month period ending September 30, 1967, an unaudited report signed and certified to be correct by its president and chief financial officer and single stockholder, which showed on its face that the company's capital was substantially impaired.[3] By letter SBA declared Maritime's indebtedness to it due and payable.[4] Maritime neither paid nor responded and SBA filed this suit.

At trial, which did not commence until September 1970, the government introduced the September 1967 report, which was an admission against interest sufficient to establish a prima facie case of impairment.[5] Maritime was allowed to

---

1. Pursuant to 15 U.S.C. § 661 et seq.

2. 15 U.S.C. §§ 687(d), 687c(a)(b).

3. As defined by the regulations, then section 107.303 of Revision 3 of the SBA Regulations, 29 Fed.Reg. 16950 (1964), now section 107.1002(a) of Revision 4 of the SBA Regulations, 13 C.F.R. § 107.-1002(a) (1972).

4. As it was authorized to do under its loan agreement with Maritime.

5. Fogarty v. United States, 263 F.2d 201, 206 (5th Cir.), cert. denied, 360 U.S. 919, 79 S.Ct. 1437, 3 L.Ed.2d 1534 (1959); Gonzales v. Landon, 215 F.2d 955 (9th Cir. 1954), rev'd on other grounds, 350 U.S. 920, 76 S.Ct. 210, 100 L.Ed. 806 (1955); Schoeps v. Carmichael, 177 F.2d 391 (9th Cir. 1949), cert. denied, 339 U.S. 914, 70 S.Ct. 566, 94 L.Ed. 1340 (1950). *Gonzales* states the general rule that "the extrajudicial statements of a party to the action, civil or criminal, are binding upon him and substantive evidence against him. There is an additional reason for the admission of these well-authenticated [extrajudicial] utterances of plaintiff, since they were statements against interest and thus have further guarantee of verity." Gonzales v. Landon, *supra* at 957.

Wigmore explained the probative value of a party's admissions against his interest in this manner:

"[A]ll admissions, used against the opponent . . . have such testimonial value as belongs to any testimonial assertion under the circumstances; and the more notably they run counter to the natural bias or interest of the party *when made*, the more credible they become . . . .

"This . . . evidential utility explains the proposition, sometimes judicially sanctioned, that an admission is *equivalent to affirmative testimony* for the party offering it."

introduce an audited report for the fiscal year ending March 30, 1968, in which allowances for uncollectible items had been substantially reduced from the amounts shown in the September report. Oral testimony revealed that the reductions had been made on instructions of the president (who had signed the September report). The trial court erred in denying relief on the ground the government had failed to prove that the September 1967 report was correct, and that the March 1968 report was incorrect, and that there was an impairment. Once the government introduced the September report—signed and certified and required to be filed with SBA—the burden shifted to Maritime to come forward with evidence disproving the correctness of that report or explaining errors and mistakes in preparation of it. With reference to the ultimate burden of persuasion, it is for the trial court in the first instance to determine whether assertions that the allowances for uncollectible items had been erroneously overstated in the September report are sufficient to overcome the government's prima facie case of impairment.

Reversed and remanded.

IV Wigmore, Evidence § 1048, at 5, 6 (3d Ed. 1940) (emphasis original). *Cf.*

IX Wigmore, Evidence § 2494 (3d Ed. 1940).