**SMALL BUSINESS ADMINISTRATION, Receiver for Hartford Small Business Capital Corporation**

v.

**Arthur B. SEGAL and Marion H. Segal, husband and wife, Jointly and Severally.**

**Civ. No. 14601.**

United States District Court, D. Connecticut.

Sept. 24, 1974.

John F. Shea, Dist. Counsel, Frances C. Kissell, Asst. Dist. Counsel, Small Business Administration, Boston, Mass., for plaintiff.

John E. Fay, West Hartford, Conn., for defendants.

## RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BLUMENFELD, District Judge.

Plaintiff, the Small Business Administration, an agency of the United States Government, is serving as receiver for the Hartford Small Business Capital Corporation ("Hartford") pursuant to an order of this Court dated February 15, 1967. It was adjudged that Hartford, a licensee under the Small Business Investment Act, had committed several violations of that Act and the regulations adopted thereunder and was indebted to the Small Business Administration in the sum of $150,000.

In 1971 plaintiff brought this action to recover from the defendants, Arthur B. Segal and Marion H. Segal, officers, directors and principal shareholders of Hartford, the losses which Hartford had suffered as a result of loans which were made to various corporations and individuals in violation of the Small Business Investment Act and the regulations adopted thereunder.[1]

1. The following provision of the Small Business Investment Act of 1958, Pub.L. 85–699, § 306, 72 Stat. 694, as amended by Act of October 3, 1961, Pub.L. 87–341, § 7(a), 75

Plaintiff has moved for summary judgment on six of the eleven counts of its complaint. With its motion, affidavits and other supporting documentation from the financial records of Hartford have been submitted. On the other hand, defendants who oppose this motion have not submitted any affidavits or other evidence in opposition. Rather, they seek to refute plaintiff's affidavits through denials contained only in counsel's Memorandum of Defendant's Objection to the Motion for Summary Judgment.[2] In view of the protraction already achieved by the defendants, there is no justification for any further postponement of the inevitable. In considering each of the counts on which plaintiff is seeking summary judgment, the Court relies only on defendants' admissions, unrefuted affidavits and other documents supporting plaintiff's motion for summary judgment. Fed.R.Civ.P. 56(e).

---

Stat. 753 was in effect at the time the violations were alleged to have occurred:

"Without the approval of the Administration, the aggregate amount of obligations and securities acquired and for which commitments may be issued by any small business investment company under the provisions of this chapter for any single enterprise shall not exceed (1) 20 per centum of the combined capital and surplus of such small business investment company authorized by this chapter, or (2) $500,000, whichever is the lesser."

This section has been superceded by 15 U.S. C. § 686 (1970). The old section bore the same number. In the text it shall be referred to as old 15 U.S.C. § 686.

Also in effect at the time of the alleged violations were 13 C.F.R. §§ 107.708 and 107.716, both of which have since been repealed. 13 C.F.R. § 107.708 provided in part:

"(a) Without the prior written approval of SBA, the aggregate amount of funds loaned to, or invested in Equity Securities of, any single small business concern, or for which commitments may be made, shall not exceed twenty percent of the combined paid-in capital and paid-in surplus of any Licensee (including in such Licensee's capital and surplus the outstanding amount of any SBA loans under section 302(a) of the Act) or $500,000, whichever is the lesser."

13 C.F.R. § 107.716 provided in part:

"(a) Self-dealing to the prejudice of SBA or the Licensee's shareholders is prohibited.

(b) Without the prior written approval of SBA, a Licensee shall not purchase Equity Securities of, or make a loan to, an officer or a director of the Licensee, or any person owning or controlling, directly or indirectly ten or more percent of the stock of said Licensee, or any close relative of such officer, director, or stock owner or controller, nor shall the Licensee purchase Equity Securities of or make a loan to any company in which such officer or director or such owner or controller of the Licensee's stock, or his close relative is an officer or director or owns or controls ten or more percent of the stock of such company: Provided, further, That without the prior written approval of SBA a Licensee shall not make such purchase of such securities or make such loan within six months after the termination of such officership or directorship in the Licensee, or within six months after the termination of such ownership or control of ten or more percent of the Licensee's stock. Nothing herein contained is intended to preclude a Licensee from permitting an officer, employee or representative from serving as a director, officer, or in any other capacity in the management of a small business concern for the purpose of protecting its investment in or loan to such concern."

2. At the eleventh hour, while the opinion in this case was being prepared for filing, defendants submitted an affidavit which reads:

"ARTHUR B. SEGAL and MARION H. SEGAL, being duly sworn hereby depose and state that they jointly and severally have read the memorandum of John E. Fay [their counsel] objecting to the Motion for Summary Judgment in the captioned matter and find that the statements made therein are true and correct to the best of our knowledge and belief."

I find that this excessively belated attempt to adopt in toto the statements and legal arguments of their attorney does not satisfy either the letter or spirit of Fed.R.Civ.P. 56(e) which requires that affidavits in opposition to a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." In addition, Rule 56(g) deals with the situation wherein affidavits are submitted "solely for the purpose of delay" and provides for the awarding of damages to the party against whom the affidavits are employed and the possibility of adjudging a party or his attorney in contempt. While this Court does not believe that such measures are called for, it will ignore defendants' late submission.

## COUNT I

Summary judgment is rendered on Count I. It is admitted by the defendants that Hartford made a loan of $40,000 to Ameril Corporation on or about June 8, 1962, a corporation in which one Irving Rill owned one hundred percent of the stock. It is further admitted that on or about September 8, 1962, Hartford loaned $50,000 to Windsor Drug and Chemical Corporation ("Windsor"). The documents which plaintiff presented in support of its motion establish that the same Irving Rill also owned fifty percent of the stock in that corporation and that defendants had before them at the time of the loan to Windsor enough documentation of that fact to put them on notice. It is admitted that Hartford sought no prior authorization for these loans from the Small Business Administration and that neither of these loans was repaid. Hartford thus suffered aggregate losses from these loans in the sum of $90,000.

 Plaintiff contends that these loans to two corporations which were controlled by one individual should be aggregated in considering whether defendants violated old 15 U.S.C. § 686 and 15 C.F.R. § 107.708 which prohibit the lending of amounts in excess of twenty percent of the combined paid-in capital and paid-in surplus of any licensee to "any single enterprise."[3]

Defendants challenge the plaintiff's aggregation of these loans to two ostensibly separate business entities in order to treat them as in excess of what is permitted to be made to a "single enterprise." It is not a plausible argument that because neither Ameril nor Windsor are sham or fictitious corporations the separate loans to each of them may not be treated as one for the purpose of determining whether the statutory lending maximum of twenty percent of the paid-in capital and surplus was exceeded. "However important it may be in other respects, the fiction of the corporate entity cannot stand athwart sound regulatory procedure." H. P. Lambert Co. v. Secretary of Treasury, 354 F.2d 819 (1st Cir. 1965); see Capitol Telephone Co. v. F. C. C., 498 F.2d 734 (D.C.Cir. 1974); Bruhn's Freezer Meats v. United States Dep't of Agriculture, 438 F.2d 1332 (8th Cir. 1971). The limitation which the statute imposes is not on a loan to a single borrower, but rather on a loan to a "single enterprise." While it is possible to elaborate on the reasons underlying the purpose which Congress meant to effect by using the explicit term "single enterprise," that is unnecessary. I agree with the well-reasoned construction given to the statute by Judge Robson in United States v. Coleman Capital Corp., 295 F.Supp. 1016 (N.D.Ill.1969):

"The Act limits the maximum loan a licensee may make to any 'single enterprise.' 15 U.S.C. § 686. For the purpose of receiving a S. B. A. loan, the term 'single enterprise' may mean several small business concerns if they are affiliated. 13 C.F.R. § 121.3–10. The regulations define 'affiliated concerns' to include situations where a third party controls or has the power to control more than one concern. 13 C.F.R. § 121.3–2(a). It is alleged by the plaintiff and admitted by the defendant that Charles L. Barancik was the controlling stockholder and an executive officer of Justrite, Chicago Etching, and Copy-Rite when each of the loans in question was made. Under the terms of the Act and the regulations, this identity of control means that these three small business concerns constitute a 'single enterprise.' The loans made to these concerns, aggregating an amount well in excess of 20 per cent of the defendant's combined capital and surplus, were made without S. B. A. approval. Therefore, the defendant clearly violated the Act and the regulations with respect to these three transactions." *Id.* at 1019.

3. *See* note 1, *supra.*

Plaintiff's documentation demonstrates that at no time during the period when these loans were made did the paid-in capital and surplus of Hartford exceed $310,500. Thus, the Court finds that the aggregated loans of $90,000 were in excess of twenty percent of the combined paid-in capital and surplus of Hartford. To make them was in violation of old 15 U.S.C. § 686 and 15 C.F.R. § 107.708.[4]

## COUNT II

Plaintiff's motion for summary judgment on Count II is granted. Defendants have admitted that on or about March 15, 1963, Hartford loaned $60,000 to each of two corporations, Amseco Corporation and Springfield Recreation Center Co. ("Springfield") and that both were wholly owned and controlled by the defendants. This Court has already held as part of the order under which Hartford was placed in receivership that these loans were in violation of 13 C.F.R. § 107.716, a regulation in effect at the time the loans were made, which prohibited the making of a loan to any company in which an officer or director of the investment company had a ten or more percent interest.[5]

It is admitted that the loan to Springfield has not been repaid. Thus, Hartford has suffered a loss of $60,000 on that loan. The status of the loan to Amseco is somewhat different. In January 1964 Amseco filed a Chapter XI proceeding and the arrangement approved therein provided for the repayment to Hartford of $30,000 of its debt without interest over a ten-year period. Defendants maintain that the Chapter XI arrangement to which they were a party released them from any liability for the remaining $30,000 plus interest of the Amseco loan. The Court does not agree. It is established that the Amseco loan violated federal regulations. In this proceeding we are concerned with the losses sustained by Hartford as a result of loans made in violation of the Small Business Investment Act. Defendants cannot escape liability for the loss of $30,000 plus interest on the full $60,000 of the illegal loan merely because plaintiff is willing to credit them with the $30,000 which will be paid to Hartford pursuant to the Chapter XI proceeding.

## COUNT III

Plaintiff's motion for summary judgment is granted. Defendants admit that on or about October 11, 1962, Hartford loaned Joseph Rodth and Co., Inc. the sum of $25,000 which has not been repaid. In support of their motion for summary judgment, the plaintiffs have submitted the affidavit of Joseph Rodth in support of their allegation that defendant Arthur Segal owned fifty percent of the stock in Joseph Rodth and Co., Inc. as of the date the loan was made. The defendants have not adduced any evidence to refute this. This loan has not been repaid. Furthermore, it is established that no authorization was sought from the Small Business Administration prior to the making of this loan.

The Court finds that this loan was made in violation of 13 C.F.R. § 107.716 and that as a result of the loan, Hartford suffered a loss of $25,000 plus interest from the date of the loan.

## COUNT IV

Plaintiff's motion for summary judgment is granted. Defendants admit that on or about December 7, 1962, Hartford made a loan in the amount of $20,000 to Munchwagons, Inc. of which $11,673.65 was earmarked to pay a debt of Munchwagons to Amcoin, Inc., a corporation which was wholly owned by defendants. In open court, defendants' counsel admitted that no part of this loan has been repaid. Furthermore, it is established that Hartford did not seek prior authorization for this loan.

Plaintiff argues and the Court agrees that such part of this loan as was ear-

---

4. *See* note 1, *supra.*

5. *See* note 1, *supra.*

marked to repay a debt to Amcoin was in violation of 13 C.F.R. § 107.716. Clearly this was an indirect payment to an enterprise in which defendants had a controlling interest.

## COUNTS X and XI

Plaintiff's motion for summary judgment on these two counts is granted. Count X involves an unexplained check in the amount of $3,500 paid to the defendant Arthur Segal on February 7, 1966, and drawn on Hartford's account. Count XI involves another such check to defendant Segal in the sum of $6,000 and dated October 4, 1966. Even if these withdrawals are charitably regarded only as loans to the defendants, they clearly violate 13 C.F.R. § 107.716 which also prohibits the making of a loan to any officer or director of a licensee. As these unexplained disbursements have not been repaid, Hartford has suffered a loss of $9,500.

■ Defendants do not challenge plaintiff's contention that they, as directors, officers and principal shareholders of Hartford, are liable to the corporation in receivership for any losses sustained by the corporation resulting from a violation of federal statutes and regulations. Although there is little case law on the subject, it is clear from 15 U.S.C. § 687c(b), (c) (1970), providing for the appointment of a receiver over a small business corporation, that the receiver is charged with the responsibility for obtaining possession of the assets of the corporation prior to its liquidation.[6] Certainly part of such responsibility would include bringing suit on any caus-es of action which the corporation has against its former directors, officers or majority shareholders.

■ The certificate of incorporation which was issued to Hartford by the State of Connecticut in 1961 provided at paragraph 3 that:

"This corporation is organized and chartered expressly for the purpose of operating as a Licensee under the Small Business Investment Act of 1958 . . . and will operate in the manner and shall have the powers, purposes, responsibilities, and be subject to the limitations (all as presently in effect or hereinafter enacted) provided by said Act, the regulations issued by the Small Business Administration . . . thereunder . . . ."

Thus, any loans authorized by defendants to be made by Hartford in violation of the Small Business Investment Act and the regulations issued thereunder were ultra vires by virtue of violating federal law and the terms of the corporate charter. It has been held that a director is liable for the losses sustained by the corporation resulting from ultra vires acts authorized by the board of directors. Cooper v. Hill, 94 F. 582 (8th Cir. 1899); Broderick v. Marcus, 152 Misc. 413, 272 N.Y.S. 455 (Sup.Ct.1934). This is true regardless of the presence or absence of any fraudulent intent on the part of the director. Hartford suffered extensive losses as a result of illegal loans which were knowingly authorized by the defendants. Defendants are liable for these losses.[7]

6. 15 U.S.C. § 687c(b) and (c) (1970) provides:

"(b) In any such proceeding the court as a court of equity may, to such extent as it deems necessary, take exclusive jurisdiction of the licensee or licensees and the assets thereof, wherever located; and the court shall have jurisdiction in any such proceeding to appoint a trustee or receiver to hold or administer under the direction of the court the assets so possessed.

(c) The Administration shall have authority to act as trustee or receiver of the licensee. Upon request by the Administration, the court may appoint the Administration to act in such capacity unless the court deems such appointment inequitable or otherwise inappropriate by reason of the special circumstances involved."

7. Furthermore, in United States v. Liner, 300 F.Supp. 996 (D.Mass.1969) it was assumed by the Court that a controlling individual would be liable to the corporation in receivership for any losses occasioned by the violation of the rules and regulations governing small business investment corporations.

The Court having found that no genuine issue as to any material fact exists as to the liability of defendants with respect to the claims in each of the six counts for which summary judgment is sought, it is ordered that judgment enter against defendants for the unrepaid loans in the amount of $226,173.65. In addition, plaintiff is entitled to interest not only on that amount, but also on the $30,000 which Amseco is to pay to Hartford over a ten-year period pursuant to the Chapter XI arrangement. Interest is to be computed from the date the loans involved were made to the date of this judgment.

Settle order on notice.