UNITED STATES of America, Plaintiff,

v.

VANGUARD INVESTMENT COMPANY, INC., Defendant.

No. C–87–374–G.

United States District Court, M.D. North Carolina, Greensboro Division.

June 10, 1988.

Joyce A. Oblon, Trial Atty., U.S. Small Business Admin., Washington, D.C., for plaintiff.

David Wagner, Winston–Salem, N.C., and Kevin S. Wiley, Chapman, Reese & Wiley, Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

HIRAM H. WARD, Chief Judge.

This matter comes before the Court on plaintiff's Motion for Summary Judgment on its complaint (February 12, 1987) and on defendant's Cross–Motion for Summary Judgment (March 7, 1988) and Motion to Strike plaintiff's notice of amounts due

(April 15, 1988). In its complaint the Small Business Administration [SBA][1] seeks the following: (a) forfeiture of defendant's license and dissolution pursuant to 15 U.S.C. § 687(d), (b) a permanent injunction and receivership for the purpose of liquidating defendant and satisfying claims against it, and (c) a money judgment for principal and interest due on debentures and securities. On the other hand, defendant Vanguard Investment Company [Vanguard] moves for summary judgment that it be allowed to file Chapter 11 bankruptcy. For the reasons stated below, the Court will grant plaintiff's motion and deny defendant's motions.

## I. *Factual Background*

On January 2, 1970, Vanguard was incorporated under the laws of North Carolina. Its principal place of business is located in Greensboro, North Carolina. On July 14, 1970, the SBA licensed Vanguard as a "small business investment company" [SBIC] under section 301(d) of the Small Business Investment Act of 1958, *as amended*, (codified as amended at 15 U.S. C. § 681(d)). SBA licensed Vanguard as an SBIC solely to do business under the provisions of the aforesaid act and the regulations promulgated thereunder. In accordance with statutory authority, SBA purchased a total of $500,000.00 worth of preferred stock from Vanguard on dates from November 29, 1974 to February 28, 1979. Additionally, SBA purchased subordinated debentures in the total face amount of $1,270,000 from Vanguard on dates from November 29, 1974 to September 5, 1979. Other facts will be incorporated into the discussion as relevant.

## II. *Procedural History*

SBA filed its Complaint and Motion and Application for Temporary Restraining Order, Preliminary Injunction, and Temporary Receivership on June 11, 1987. On June 16, 1987, the Court held a hearing on the motion for a TRO and temporary receivership; both parties were represented. Upon considering the evidence and hearing argument, the Court entered a TRO and appointed a temporary receiver. *See* (Temporary Restraining Order and Appointment of Temporary Receiver filed herein on June 16, 1987). The June 16, 1987, Order brought Vanguard under the exclusive jurisdiction of the Court and ended the authority of Vanguard's directors, officers, employees, and agents to act on behalf of Vanguard. (*Id.* at 3–4). The parties stipulated that the Order would be effective until the preliminary injunction matter was heard and ruled upon by the Court. (*Id.* at 3).

Prior to the hearing on the *preliminary injunction,* but approximately three weeks after the Court's June 16, 1987, Order, a petition for relief under Chapter 11 of the Bankruptcy Code was filed in the Bankruptcy Court for the District of Columbia purportedly on behalf of Vanguard. However, the Court proceeded with the July 13, 1987, preliminary injunction hearing because the actions of suspended directors, officers, or employees were a nullity and did not invoke the automatic stay provisions of 11 U.S.C. § 362.

Subsequently, the Court entered its opinion of August 7, 1987, granting a preliminary injunction and continuing the receivership. Therein, the Court held the purported bankruptcy filing to be void. *See* (Memorandum Opinion and Order For Preliminary Injunction and Temporary Receivership filed herein on August 7, 1987, at 3–7 [hereinafter Opinion of August 7, 1987]). 667 F.Supp. 257. Additionally, the Court held that Vanguard was not entitled as a *matter of right* to file a bankruptcy petition. (*Id.*). However, the Court did not reach the question of whether, in its equitable discretion, it should allow a petition in bankruptcy as an appropriate remedy.

On October 5, 1987, the receiver filed his Report and Recommendations. On November 16, 1987, Vanguard filed its Objections thereto. Thereafter, the parties filed the pending motions.

---

1. The plaintiff, United States of America, brought this action on behalf of SBA; thus, the Court will simply refer to plaintiff as SBA.

Plaintiff added an amendment to its complaint by a pleading dated June 11, 1987.

### III. *Discussion*

The familiar standard for summary judgment mandates that if the record shows that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, then summary judgment should be entered forthwith. Fed.R.Civ.P. 56. If the record indisputably establishes regulatory violations by an SBIC, then summary judgment may be appropriate in cases such as the one *sub judice. See generally United States v. Coleman Capital Corp.*, 295 F.Supp. 1016, 1020–21 (N.D.Ill.1969); *United States v. First Carolina Fund*, 276 F.Supp. 767, 768 (D.S.C.1967). Moreover, conclusory allegations that are unsupported by specific facts are ineffective to defeat a motion for summary judgment if the movant has otherwise carried his burden on regulatory violations. *See Coleman Capital Corp.*, 295 F.Supp. at 1021.

The Court will first address whether plaintiff is entitled to summary judgment on its claim to forfeit defendant's license and dissolve defendant. Then, the Court will consider defendant's motion for summary judgment to allow it to file Chapter 11 bankruptcy. Lastly, the Court will address the issues related to an injunction, receivership, and money judgment.

### A. *Is SBA Entitled to Summary Judgment that Vanguard Is Subject to License Forfeiture and Dissolution?*

Section 687(d) of Title 15, controls dissolution for statutory or regulatory violations. It states:

Should any small business investment company violate or fail to comply with any of the provisions of this Act or of regulations prescribed hereunder, all of its rights, privileges, and franchises derived therefrom may thereby be forfeited. Before any such company shall be declared dissolved, or its rights, privileges, and franchises forfeited, any non-compliance with or violation of this Act shall be determined and adjudged by a court of the United States of competent jurisdiction in a suit brought for the purpose in the district, territory, or other place subject to the jurisdiction of the United States, in which the principal office of such company is located. Any such suit shall be brought by the United States at the instance of the Administration or the Attorney General.

15 U.S.C. § 687(d).

Accordingly, if statutory and/or regulatory violations are supported such that no genuine issue of fact exists thereon, the Court may grant summary judgment on the license forfeiture and dissolution issue. Notably, upon a finding of a violation, the dissolution provisions are permissive, not mandatory.

The SBA has alleged several regulatory violations and the Court will address them in order.

### 1. *Capital Impairment*—13 C.F.R. § 107.203(d)

The Code of Federal Regulations [CFR] defines capital impairment. "Capital impairment shall be deemed to exist when the undistributed net realized earnings deficit of a section 301(d) Licensee exceeds seventy-five percent ... of Private Capital." 13 C.F.R. § 107.203(d). Vanguard's financial statements for fiscal years 1984 and 1985 demonstrate capital impairment. The 1984 statement, taking Vanguard's numbers at face value, indicates an undistributed net realized earnings deficit [earnings deficit] of $978,187. (Plaintiff's Preliminary Injunction Hearing Exhibit No. 15, at 2 [hereinafter Plaintiff's Hearing Exhibit No. _____]). Private capital is represented to be $900,053. (*Id.*). Therefore, the earnings deficit is 108.68% of private capital, indicating impairment. Using the same analysis on the 1985 financial statement indicates that the earnings deficit was $918,797 and that private capital was $900,053 which yields an impairment ratio of 102.08%. (Plaintiff's Hearing Exhibit No. 14, at 2). The impairment ratio as calculated from financial statements for these years may be significantly understated as $400,000 worth of the reported *private* capital figure is actually an investment by a *governmental* entity, the Department of Transportation [DOT]. *See*

**1224**

(Preliminary Injunction Hearing Testimony of Walter C. Intlekofer).

SBA sent numerous letters to Vanguard about its serious concern regarding the licensee's capital position. *See* (Plaintiff's Hearing Exhibits Nos. 2–8, 10–13). By letter of June 28, 1985, SBA gave Vanguard until December 31, 1985, to cure its capital impairment if it otherwise met its obligations. *See* (Plaintiff's Hearing Exhibit No. 8). SBA extended the deadline to July 31, 1986, and indicated that no further extensions were possible unless Vanguard brought its impairment ratio down to 85% by such date. *See* (Plaintiff's Hearing Exhibit No. 6). Mr. Intlekofer testified at the July 13, 1987, preliminary injunction hearing that Vanguard had a loss in 1986 and that in his opinion Vanguard was still capitally impaired.

■ Vanguard argues that it received a $250,000 addition to private capital from an investment by the Trudaux Corporation. However, Mr. Andrews, in a June 30, 1987, assessment of Vanguard's financial position, referred to the Trudaux money as a "proposed invest[ment]." *See* (Plaintiff's Hearing Exhibit No. 19). Even with credit for a private capital contribution from Trudaux, Vanguard's earnings deficit to private capital ratio indicates impairment in view of the fact that the $400,000 invested by DOT may not be considered as private capital.

■ The burden of production shifts to an SBIC on capital impairment once the SBA introduces a certified financial report. *United States v. Maritime Investment Corp.*, 465 F.2d 434, 436 (5th Cir.1972). Nevertheless, in the face of the undisputed evidence, defendant has offered no evidence to negate capital impairment. Therefore, the Court concludes that Vanguard is capitally impaired under 13 C.F.R. § 107.203(d) [2] and that no genuine issue of fact exists thereon.

■ Regarding the effect of capital impairment, section 107.203(d) states in pertinent part:

> [C]apital impairment ... shall also constitute an event of *default if* Licensee fails to give SBA prompt *written notice* as soon as it knows or should reasonably have known thereof, *or if, following such notice*, Licensee fails to cure the impairment within time limits set by SBA in writing.... In either such event, SBA may, in its discretion, by written notice declare the entire principal amount of preferred securities and indebtedness of the Licensee, issued to, held or guaranteed by SBA, immediately due and payable.

Therefore, Vanguard's failure to give prompt written notice of capital impairment and failure to cure by July 31, 1986 (the time set by SBA) constituted events of default.

2. *Financial Reporting Requirements* —13 C.F.R. § 107.1002(e)

■ The record indicates that Vanguard has failed to meet the financial reporting requirements for fiscal year 1986. Section 107.1002(e) states:

> Each Licensee shall submit to SBA, at the end of each fiscal year, a report containing financial statements for the fiscal year (Part I of SBA Form 468) as well as management information (Part II of SBA Form 468).... The financial statements contained in the Annual Report will be examined by the Licensee's independent public accountant in accordance with Appendix A, Audit Guide for Small Business Investment Companies.

13 C.F.R. § 107.1002(e).

Mr. Intlekofer testified at the July 13, 1987, preliminary injunction hearing that Vanguard did not submit the form 468 for the 1986 fiscal year. *See also* (Supplemental Affidavit of Walter C. Intlekofer ¶ 16 [June 16, 1987]). Furthermore, Vanguard has offered no evidence which disputes In-

---

**2.** The Court notes that Vanguard's argument that it is only capitally impaired at above the 100% level under a grandfather provision is unpersuasive. To qualify for the grandfather provision, a licensee's earnings deficit must not exceed 100% of private capital during the five year period after September 30, 1983. *See* 13 C.F.R. § 107.203(d). Since Vanguard's ratio exceeded 100% during the five year period, it is not within the grandfather provision.

tlekofer's testimony and affidavit. Specifically, Mr. Andrews' affidavit fails to contradict plaintiff's position. *See* (Andrews Affidavit, at 2 [March 7, 1988]). When a motion for summary judgment is supported as provided in Rule 56, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56. Since Vanguard has not set forth specific facts, no genuine issue of fact exists on this question, and the Court finds that Vanguard violated 13 C.F.R. § 107.1002(e).

3. *Failure to Pay Interest*—13 C.F.R. § 107.906

 The evidence also establishes that Vanguard failed to make interest payments when due in violation of 13 C.F.R. § 107.906. Section 107.906 states that nonperformance of any of the requirements of any debenture issued to the SBA shall constitute a violation of the regulations. As admitted by counsel at the TRO hearing, Vanguard failed to meet its interest and principal obligations when due on debenture No. 0115940000 although it subsequently paid off this debenture. *See* (Plaintiff's Hearing Exhibit No. 18 (March 7, 1985 Certified Statement of Account for Debenture 011594000)). However, an after-the-fact correction of a regulatory violation does not "cure" it. *See United States v. Coleman Capital Corp.*, 295 F.Supp. 1016, 1020 (N.D.Ill.1969). Mr. Intlekofer's testimony at the hearing and his affidavit confirm Vanguard's failure to timely make its interest payments. *See* (Intlekofer Affidavit ¶ 10 [June 11, 1987]).[3]

 Additionally, SBA accelerated Vanguard's obligations under its outstanding debentures and preferred stock by letter dated March 11, 1985. *See* (*id.*, at Exhibit D). Such acceleration was justified by Vanguard's default in principal and interest payments on the $280,000 debenture

and Vanguard's capital impairment without written notice. *See* (*id.* at Exhibit B (principal on $280,000 debenture due on November 29, 1984)); (Plaintiff's Hearing Exhibit No. 18 (Certified Statement of Account for $280,000 debenture)). Vanguard does not contend that it has paid off the remaining debentures and preferred stock under the acceleration. However, Vanguard contends that plaintiff agreed to decelerate its obligations. In any event, the Court need not resolve this matter as Vanguard clearly violated the regulations pertaining to capital impairment and financial reporting. Additionally, Vanguard's admissions relating to the original default on the $280,000 debenture establish a violation of 13 C.F.R. § 107.906.

4. *Employment of Investment Manager Without Approval*—13 C.F.R. § 107.709(a)

SBA opines that Vanguard violated 13 C.F.R. § 107.709(a). SBA relies on one of defendant's financial statements that shows a management expenditure and on Mr. Intlekofer's testimony that the SBA records do not contain a record of SBA approval. A genuine issue of fact exists as to this allegation. Accordingly, the Court does not rely on the alleged violation of section 107.709(a) as a basis for its ruling on plaintiff's motion.

5. *Self Dealing*—13 C.F.R. § 107.903

 The SBA contends that officers of Vanguard engaged in a self dealing transaction that violated 13 C.F.R. § 107.903 (conflicts of interest), which provides as follows:

(a) General. Self-dealing to the prejudice of the Small Concern, or of a Corporate Licensee or its shareholders, or, in the case of an Unincorporated Licensee, the partnership or its members, or of SBA, is prohibited.

13 C.F.R. § 107.903(a).

The Receiver's report describes a transaction among Vanguard, Caro Broadcast-

---

3. The present balances due on the outstanding obligations are reflected in certified statements of account dated April 1, 1988. These are discussed in relation to plaintiff's claim for a money judgment.

ing, Ltd. [Caro], and Greensboro National Bank [GNB]. GNB made a commercial loan to Caro on or about October 17, 1986, in the amount of $130,000. Lee D. Andrews, the president of Vanguard, assigned its money market account at GNB as collateral for the Caro loan. Vanguard received no consideration for its pledge of collateral and has no ownership interest in Caro. Significantly, however, two of Vanguard's officers have pecuniary interests in Caro. Specifically, Mr. Andrews—president of Vanguard—owns twenty percent of Caro. Similarly, Mr. David H. Wagoner—treasurer of Vanguard—owns twenty percent of Caro.

 Vanguard has failed to put the above facts in issue. By Order of October 26, 1987, the Court ordered Vanguard to make specific, written objections to those portions of the Receiver's report to which it objected. The Court also stated that "any portion of the report and recommendation to which specific, written objection is not made shall be deemed admitted by Vanguard." (Order filed herein on October 16, 1987). Vanguard objected to this part of the Receiver's report in only the most conclusory fashion. Specifically, Vanguard did not object to the Receiver's statement of the pertinent facts but only stated that the assistance given Caro was legitimate. *See* (Vanguard's Objections to Receiver's Report and Recommendations on Vanguard Investment Company, Inc. ¶ 4 [Nov. 16, 1987]). Since Vanguard failed to object to the Receiver's factual description of the Caro transaction, such facts are deemed admitted.

In its brief, Vanguard also argues that since David Wagoner personally guaranteed the Caro loan its exposure was limited. Vanguard's argument on this point strikes the Court as more indicative of David Wagoner's personal interest in the transaction than of anything else. Additionally, his personal guarantee did not eliminate the prejudice to Vanguard from having its asset encumbered.

 The record is not entirely clear as to whether Andrews and Wagoner acted with the authority of Vanguard in the Caro transaction. Therefore, the record does not demonstrate, such that no genuine issue of fact exists, that *Vanguard* itself violated 13 C.F.R. § 107.903. However, the undisputed facts do demonstrate that the president and treasurer of Vanguard violated 13 C.F.R. § 107.903. Such facts are relevant to the Court's consideration of whether Vanguard should continue to operate.

 To summarize, the Court has now reviewed the allegations of regulatory violations. The record demonstrates, such that no genuine issue of fact exists, that Vanguard violated the regulations pertaining to capital impairment (13 C.F.R. § 107.203(d)), financial reporting (13 C.F.R. § 107.1002(e)), and interest obligations (13 C.F.R. § 107.906). Therefore, section 687(d) of Title 15, authorizes the forfeiture of Vanguard's license and its dissolution. As stated before, section 687(d) is not mandatory. Nevertheless, after considering the totality of circumstances surrounding Vanguard's operation, the Court finds manifest that its license should be forfeited and that it should be dissolved.

The following factors support forfeiture and dissolution. Vanguard has a long history of difficulty in meeting its obligations despite the SBA's attempts to work with it. Moreover, Vanguard's operation declined such that it more closely resembles a real estate holding company than a small business investment company. In other words, Vanguard no longer serves the purpose for which it was licensed: "to stimulate and supplement the flow of private equity capital and long term loan funds which small-business concerns need for the sound financing of their business operation and for their growth, expansion and modernization." 15 U.S.C. § 661. Additionally, the Court is troubled by the management practices at Vanguard. Particularly the self dealing by Vanguard officers in the Caro transaction and the inconsistent interpretations given to the "Trudaux Investment." In summary, the Court finds that plaintiff has carried its summary judgment burden as to regulatory violations, forfeiture, and dissolution.

## B. Should Vanguard Be Allowed to File Chapter 11 Bankruptcy?

In its response to SBA's motion, Vanguard presses strenuously its desire to proceed in a Chapter 11 reorganization. The Court has previously held that Vanguard's earlier purported bankruptcy filing is void. *See* (Opinion of August 7, 1987, at 3–7). Additionally, the Court held that Vanguard is not entitled as a *matter of right* to proceed in bankruptcy. *See* (*id.* at 7). However, the Court has not yet ruled on whether, in its equitable power and discretion, Vanguard should be permitted to file a Chapter 11 petition. *See* (Order filed herein on October 16, 1987, at 2).

Vanguard contends that to deny it a Chapter 11 remedy would be an abuse of discretion. It contends that an SBIC should be treated as any other Debtor and that an SBA receivership should be treated as any other receivership. Vanguard relies on *United States v. Royal Business Funds Corp.*, 724 F.2d 12 (2d Cir.1983). The *Royal* court stated that an SBA receivership is governed by general federal receivership principles. *Id.* at 16. However, *Royal* also said that the right to file bankruptcy is not absolute and upheld the district court's decision not to allow the SBIC to file bankruptcy. *Id.* The Court fully discussed these matters in its August 7, 1987, Opinion. In any event, counsel for Vanguard conceded at the March 30, 1988, hearing that it does not contend that Chapter 11 bankruptcy would be appropriate if the Court determines that Vanguard's license should be forfeited and that it should be dissolved.

In the previous section dealing with the forfeiture and dissolution issue, the Court carefully considered the regulatory violations and operational characteristics of Vanguard. The Court concluded from the totality of circumstances that forfeiture and dissolution are appropriate. Given this holding, no possible justification exists for allowing Vanguard to attempt to reorganize in bankruptcy under Chapter 11. Therefore, the Court will not exercise its equitable discretion to allow Vanguard to file under Chapter 11. Accordingly, the Court will deny Vanguard's cross-motion for summary judgment.

The Court notes in support of its holding that an SBIC has no existence independent of the SBA regulations which define its origin, operation, and termination. The overall regulatory scheme seeks to further government policy as well as protect government investment in SBICs. Thus, an action to forfeit an SBIC's license and to dissolve it has characteristics of a regulatory enforcement action, particularly if the action alleges violation of nonfinancial regulations.

## C. Is Plaintiff Entitled to Permanent Injunction and Receivership to Liquidate?

Section 687c of Title 15, United States Code, controls the availability of injunctions and receivers in the SBIC context. In pertinent part it states:

(a) Upon a showing by the administration that [a] licensee ... has engaged [in any acts or practices which constitute ... a violation of any provision of this chapter, or of any rule or regulation under this chapter], a permanent or temporary injunction, restraining order, or other order *shall* be granted without bond.

(b) In any such proceeding the court as a court of equity may, to such extent as it deems necessary, take exclusive jurisdiction of the licensee or licensees and assets thereof, wherever located; and the court shall have jurisdiction in any such proceeding to appoint a trustee or receiver to hold or administer under the direction of the court the assets so possessed.

(c) The Administration shall have authority to act as trustee or receiver of the licensee. Upon request by the Administration, the court may appoint the Administration to act in such capacity unless the court deems such appointment inequitable or otherwise inappropriate by reason of the special circumstances involved.

15 U.S.C. § 687c(a)–(c) (emphasis added).

Under the Court's holdings on the violations, forfeiture, and dissolution issues, the

SBA is entitled to a permanent injunction and receivership. Because Vanguard is to be dissolved, the receivership will be for the purpose of liquidating Vanguard and satisfying claims under the Court's supervision. The SBA will continue as receiver as it can most efficiently effect liquidation.

### D. *Is Plaintiff Entitled to a Judgment for Money Damages?*

 The parties agree that Vanguard is obligated to plaintiff on a $490,000 debenture dated October 31, 1977 and a $500,000 debenture dated September 5, 1979. *See* (Affidavit of Walter C. Intlekofer, at Exhibit B [June 11, 1987]). Furthermore, "[t]he entire indebtedness ... of the Licensee issued to, held or guaranteed by SBA shall immediately become due and payable to SBA without notice, presentation, or demand, whenever: ... (iv) A petition is filed in commencement of any ... receivership, dissolution or other similar creditor's rights proceeding, by or against the Licensee...." 13 C.F.R. § 107.203(b)(2). Thus, the entire indebtedness on the two debentures is due and payable to SBA.

 Plaintiff submitted a Notice (April 8, 1988) of the amount owed by Vanguard. Subsequently attached thereto were certified statements of account for both of the debentures. The statements show the principal amount, the interest due as of April 1, 1988, and the rate of interest accrual thereafter. Defendant has adduced no evidence to contradict these certified statements of account; therefore, no genuine issue of fact exists thereon.[4] Computing the total indebtedness from the certified statements of account yields a total indebtedness *on the debentures of* $1,087,028.33.[5] Therefore, the Court will grant summary judgment to plaintiff in this amount on the debentures.

 Plaintiff also seeks a judgment with respect to its preferred stock holdings in Vanguard. The Court believes SBA's appropriate avenue of recovery on its equity holdings and dividends is to make a claim before the receiver in order that priority may properly be assessed.

IT IS, THEREFORE, ORDERED that plaintiff's Motion for Summary Judgment be, and the same hereby is, GRANTED as further specified below.

IT IS FURTHER ORDERED that Vanguard's license to operate as an SBIC be, and the same hereby is, FORFEITED and that Vanguard be DISSOLVED.

IT IS FURTHER ORDERED AND DECREED that this Court grants an Injunction, and this Court will take exclusive jurisdiction of defendant, Vanguard Investment Company, Inc., and all of its assets wherever situated, and enjoins the defendants, its past and/or present officers, agents, employees and creditors, or any other individual or entity having knowledge of or control over any of defendant's current or former assets, from encumbering, conveying, disposing, levying or executing or in any other manner, dealing with any of the assets of defendant wherever situated and from further violating the Small Business Investment Act of 1958, as amended, and the regulations promulgated thereunder.

IT IS FURTHER ORDERED AND DECREED that:

1. Pursuant to the provisions of 15 U.S.C. § 687c, this Court shall take exclusive jurisdiction of Vanguard Investment Company, Inc. [Vanguard], and all of its assets, wherever located, and the Small Business Administration [SBA or Receiver] is hereby appointed receiver of Vanguard to serve without bond until further Order of this Court. The Receiver is appointed for the purpose of marshaling and liquidat-

---

4. Vanguard filed an objection to plaintiff's Notice before the certified statements of account were attached thereto. However, Vanguard has since failed to dispute the facts in the statements of account.

5. The indebtedness on the $500,000 debenture is $500,000 (principal), plus $48,250 (interest through April 1, 1988), plus $8,625 (interest from April 2, 1988, until the date of judgment) yielding $556,875. The indebtedness on the $490,000 debenture is $490,000 (principal), plus $33,226.42 (interest through April 1, 1988), plus $6,926.91 (interest from April 2, 1988, until date of judgment) yielding $530,153.33.

ing the assets of Vanguard and satisfying claims under the direction of the Court.

2. The Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers and directors of Vanguard under applicable state and federal law and by the Charter, By–Laws, and Articles of Incorporation of said corporation, in addition to all powers and authority conferred upon the Receiver by the provisions of 15 U.S.C. § 687c. The directors, officers, employees and agents of Vanguard are hereby suspended. However, such persons may be retained in the discretion of the receiver. Such persons shall have no authority with respect to Vanguard's operations or assets, except as may hereafter be expressly granted by the Receiver. The Receiver shall assume and control the operation of Vanguard and shall pursue and preserve all of its claims. The Receiver may bring suit on any causes of action which Vanguard has against any parties liable to Vanguard.

3. The past and/or present officers, directors, agents and employees of Vanguard, as well as all those acting in their place, are hereby ordered and directed to turn over to the Receiver forthwith all books, records, documents, accounts and all other instruments and papers of said corporation and all other assets and property of the corporation, whether real or personal. If the Receiver requests, Vanguard shall furnish a written statement within five (5) days of such request, listing the identity, location and estimated value of all assets of Vanguard as well as the names, addresses and amounts of claims of all known creditors of Vanguard. All persons having control, custody or possession of any assets or property of Vanguard are hereby directed to turn such property over to the Receiver.

4. The Receiver shall promptly give notice of its appointment to all known officers, directors, agents, employees, shareholders, creditors, and debtors of Vanguard. All persons and entities owing any obligations or debts to Vanguard shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and its re-ceipt for such payments shall have the same force and effect as if Vanguard had received such payments and receipt thereof.

5. The Receiver is hereby authorized to open such Receiver's bank accounts as it may deem necessary, to utilize SBA personnel, and to employ such other personnel as necessary to effectuate the operation of the receivership including, but not limited to, attorneys and accountants, and is further authorized to expend receivership funds to compensate such personnel in such amounts and upon such terms as the Receiver shall deem reasonable in light of the usual fees and billing practices and procedures of such personnel. The Receiver is not required to obtain Court approval prior to the disbursement of receivership funds for payments to personnel employed by the Receiver or payments for expenses incidental to administration of the receivership.

6. Vanguard's past and/or present officers, directors, agents, shareholders, employees and other appropriate persons shall cooperate fully with the Receiver regarding the business of said corporation, information thereon, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to Vanguard. Should such persons fail to cooperate in accordance with this Order, the Receiver may depose them in accordance with the Federal Rules of Civil Procedure.

7. The parties to any and all civil legal proceedings of any nature, including arbitration proceedings and excluding the instant proceeding, wherever located, involving Vanguard, the Receiver, or any of Vanguard's present officers or directors sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise, or any of the assets of Vanguard, are enjoined from commencing or continuing any such legal proceeding of any nature, including any arbitration proceedings, or from taking any action, including discovery, in connection with any such proceeding. All civil legal proceedings, in-

cluding arbitration proceedings and excluding the instant proceedings, involving Vanguard, any of the assets of Vanguard, or any of the present officers or directors of Vanguard sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise, wherever located, are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from making or permitting any action until further Order of this Court.

8. Vanguard and its past and/or present directors, officers, agents, employees and other persons acting in concert or participation therewith be, and they hereby are, enjoined from either directly or indirectly taking any actions or causing any such action to be taken which would dissipate the assets and property of Vanguard to the detriment of the Receiver appointed in this cause, including but not limited to destruction of corporate records, or which would violate the Small Business Investment Act of 1958, as amended, [the Act], 15 U.S.C. § 661 *et seq.*, or the regulations promulgated thereunder, [the Regulations], 13 C.F.R. § 107.1 *et seq.* (1985).

9. The Receiver is authorized to borrow on behalf of Vanguard from the SBA. The Receiver is authorized to cause Vanguard to issue Receiver's Certificates of Indebtedness in the principal amounts of the sums borrowed. Said Receiver's Certificates of Indebtedness shall have priority over all other debts and obligations of Vanguard, excluding administrative expenses, whether presently existing or hereinafter incurred, including without limitation any claims of stockholders of Vanguard.

10. This Order shall become effective immediately upon filing and service upon the defendant by the United States Marshal and shall remain in full force and effect until further order of the Court.

IT IS FURTHER ORDERED that plaintiff have and recover from Vanguard $1,087,028.33 on Loans Nos. 01205700 and 01229000 evidenced by debentures respectively dated October 31, 1977 and September 5, 1979. The Court directs that judgment be entered as to this claim because no just reason for delaying entry thereof exists. Plaintiff's motion as it relates to a request for money damages on its equity holdings is DENIED because such claim is premature and should be made before the Receiver in order that priorities may properly be assessed.

IT IS FURTHER ORDERED that defendant's Cross–Motion for Summary Judgment and Motion to Strike be, and the same hereby are, DENIED.