### ORANGE NAT. BANK v. GOODMAN & BEER CO., Inc., et al.

### No. 14507.

Court of Appeal of Louisiana. Orleans.

Nov. 13, 1933.

Merrick, Schwarz, Guste, Barnett & Redmann, of New Orleans, for appellants.

Dart & Dart, of New Orleans (Louis C. Guidry, of New Orleans, of counsel), for appellee.

JANVIER, Judge.

Plaintiff seeks to recover attorney's fees and other amounts which it alleges it was compelled to pay as the result of the illegal issuance of a writ of sequestration obtained at the instance of defendant and under which certain property of plaintiff was seized.

The Rogers Milk Products Company, Inc., a corporation in New Jersey, shipped to New Orleans a carload of milk.

The milk was intended for defendant Goodman & Beer Company, Inc., in New Orleans, and the bill of lading was what is commonly known as a "shipper's order notify" bill; the carrier being given instructions to notify the Goodman & Beer Company, Inc., upon arrival of the shipment in New Orleans. When the milk arrived, the Goodman & Beer Company was duly notified. It appears that the Rogers Company was indebted unto the Goodman & Beer Company in a sum greater than the value of the milk, and the latter company understood that the shipment had been made as a credit against the said amount which was due it. Therefore, when the bill of lading appeared in a New Orleans bank, attached to a draft against the Goodman & Beer Company, that company, believing that the milk belonged to it, caused to be issued a writ of sequestration, and under it the civil sheriff seized and took into his possession the said bill of lading.

Thereupon the present plaintiff, Orange National Bank of Orange, N. J., filed with the civil sheriff an affidavit in which it was stated that the bill of lading was the property of the said bank and not of the Rogers Company. Upon presentation of the said affidavit, the bank, through its representative, demanded the release to it of the said bill of lading.

The Goodman & Beer Company then filed with the civil sheriff what is known as a forthcoming bond, and accordingly the sheriff refused to surrender the bill of lading to the representatives of the bank.

The bank then intervened in the sequestration suit, and, claiming ownership of the said bill of lading, sought possession thereof and prayed for dissolution of the writ of sequestration.

In that suit, which was No. 146332 of the docket of the civil district court, there was judgment in favor of the bank maintaining its right to the said document and dissolving the said writ.

However, when the bank obtained the bill of lading and demanded of the delivering carrier the property described, it developed that the said carrier had already, without requiring the production of the bill of lading, delivered the shipment of milk to the Goodman & Beer Company.

This was done under an agreement between

the delivering carrier and the Goodman & Beer Company, which is said to be customarily in effect between carriers and responsible consignees, and under which the said consignees furnish in favor of the carriers surety bonds to indemnify the carriers against loss resulting from making deliveries prior to arrival of the bills of lading.

It often happens that shipments arrive before the shipping documents, and, where perishable goods are involved, it is highly desirable that they be unloaded and disposed of as soon as possible. Therefore the railroads have permitted the establishment of the custom of allowing delivery to be made to the apparent consignee upon the furnishing of such surety bond.

The delivering carrier in this instance had made delivery under such a bond, and consequently could not deliver the shipment to the representatives of the bank when the bill of lading was presented. Thereupon the bank, in a separate suit, claimed of the carrier the value of the said shipment, and ultimately obtained judgment, which has been paid.

The present suit has as its object the recovery of four items of alleged damage which are claimed to have been sustained by the bank. The defendants are the Goodman & Beer Company, Inc., at whose instance the writ of sequestration was issued, and the Union Indemnity Company, surety on the forthcoming bond which was furnished to the sheriff by the Goodman & Beer Company. The items of damage claimed are as follows: (1) $375 attorney's fees alleged to have been paid to the attorneys who were successful in dissolving the writ of sequestration; (2) $450 attorney's fees alleged to have been paid to the attorneys who successfully prosecuted the suit against the delivering carrier; (3) $26.25 alleged to have been paid for the printing of a brief which was filed in the suit against the delivering carrier; and (4) $124.77, which is said to represent the difference in interest between the legal rate allowed in New Jersey, 6 per cent., and the legal rate in Louisiana, 5 per cent.

In the district court the claim for additional interest, the claim for costs of printing briefs, and the claim for attorney's fees for prosecuting the suit against the delivering carrier were rejected, and judgment was rendered for plaintiff for $300; that being the amount shown to have been paid by the bank to the attorneys who were successful in dissolving the writ of sequestration. When evidence was tendered in support of the claim for the attorney's fees paid for prosecuting the suit against the delivering carrier, that evidence was rejected by the district court on the ground that that item of damage could not be presented as a claim against the present defendant, since it was too remote from the original alleged cause of the said damage,

to wit, the issuance of the writ of sequestration.

From the judgment rendered below, the Goodman & Beer Company has appealed, and the Orange National Bank has answered the appeal, but has apparently abandoned its claim for costs of printing briefs and for additional interest and for the additional $75 claimed as attorney's fees in the sequestration suit, and has limited the claim made in the said answer to the appeal to the $450 fee alleged to have been paid to the attorneys who prosecuted the suit against the carrier.

Appellant maintains that even the fee of $300 should not have been allowed because of the fact that, in provoking the issuance of the writ of sequestration, it acted in good faith and in the firm belief that it was in reality entitled to the bill of lading, and appellant declares that not in every case is one who is successful in dissolving a writ of sequestration entitled to be reimbursed attorney's fees and other damages, but that such is to be permitted only where the writ is sued out recklessly and without probable cause.

Appellant further asserts that, even if a fee is chargeable against it, the amount awarded is excessive and should be substantially reduced, and that, in fixing such fee, a court should be guided, not by the charge made by the particular attorneys in the particular case, but should limit its consideration to the question of what would be a fair and reasonable fee, taking into account the amount involved, the labor expended, and the ability and experience of the attorneys.

■ That an attorney's fee was necessarily incurred for the dissolution of the writ of sequestration and that such fee is an element of damage is, we believe, well settled. In 17 Corpus Juris, p. 809, § 135, it is stated that: "Where the natural and proximate consequence of a wrongful act has been to involve plaintiff in litigation with others, there may, as a general rule, be a recovery in damages against the author of such act of the reasonable expenses incurred in such litigation, together with compensation for attorneys' fees, and such costs as may have been awarded against plaintiff; but such expenses must be the natural and proximate consequence of the injury complained of, and must have been necessarily incurred."

As supporting the above-stated rule, the following Louisiana cases are cited: Gilkerson-Sloss Co. v. Yale, 47 La. Ann. 690, 17 So. 244, 246, and Dyke v. Walker, 5 La. Ann. 519. In the syllabus of the latter case appears the following: "Lawyers' fees incurred in recovering property which had been improperly seized in a suit against another person, may be recovered back in a suit for damages for the illegal seizure."

It is to be noted that reimbursement of the

damage incurred is not made to depend upon proof of the want of probable cause.

In American Hoist & Derrick Co. v. Frey, 127 La. 183, 53 So. 486, 488, the Supreme Court quoted with approval the following language from the opinion of the district judge:

"Having reached the conclusion that the writ of sequestration was wrongfully issued, but that it was not prompted by malice or bad faith, it follows that defendant is entitled to be reimbursed the actual damages which he may have suffered as a result of the issuance and execution of said writ.

"The only damages which, in my opinion, defendant is entitled to recover are attorney's fees and harm to his reputation."

Counsel for defendant suggest that the case of Gilkerson-Sloss Co. v. Yale supports the view that damage for illegal resort to a writ of sequestration is to be recovered only where the writ is sued out recklessly and wantonly and without probable cause, and there is no doubt in that decision much which indicates that many of the elements of damage which ordinarily result from such seizure cannot be recovered unless there is bad faith, but, so far as the attorney's fees are concerned, that decision is authority for the right in plaintiff to recover, for there, although the court found that "the defendants' seizure does not present the least indicia of wantonness or want of probable cause, * * *" nevertheless the court said: "But defendants' seizure did put the plaintiff to the expense of employing counsel to resist the sale of the property."

The court allowed $350 as attorney's fees.

It seems to us that in the instant case plaintiff is entitled to such reasonable amount as may have been expended in the employment of counsel.

The value of the property seized was slightly in excess of $3,000. The time expended by the attorneys was, of course, more than that actually consumed in the trial of the rule to dissolve the writ. The services of the attorneys were ably and efficiently rendered, and, while $300 may be the maximum which would be justified by the records which are before us, we are not prepared to say that that amount is excessive. We must bear in mind that the sequestration suit was heard before the same judge who later fixed the fee which we are now considering, and we believe that he was better able to judge of the amount which should be awarded as compensation for those services than are we.

The claim for $450 for attorney's fees charged in the suit against the carrier does not appear to be an item of damage recoverable in this suit, if at all, because that fee was not rendered necessary by the illegal seizure.

If, as the result of the seizure, the Goodman & Beer Company had obtained possession of the bill of lading, and had presented it to the carrier, and had thereby received the goods represented by the bill of lading, then, possibly, it could have been properly said that the delivery of the goods resulted from the sequestration. But, even had such been the case, the costs of prosecuting the second suit would have been a damage so remote from the original act as to make it extremely doubtful if it could be said to have proximately resulted therefrom. However, such was not the case. Delivery was made, not because the Goodman & Beer Company secured the bill of lading, but because that corporation had entered into a contract with the carrier under which delivery could be effected without surrender of the bill of lading. Consequently the suit against the carrier did not result from the sequestration suit. The district judge was correct in refusing to permit the introduction of evidence tendered to support that claim.

The judgment appealed from is affirmed, at the cost of appellant.

Affirmed.