**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 99-31123**
_____

**FEDERAL DEPOSIT INSURANCE CORPORATION,**
**As Manager of the Federal Savings and Loan**
**Insurance Corporation Resolution Fund,**

**Plaintiff-Appellant,**

**versus**

**GERALD C. BARTON, ET AL.,**

**Defendants,**

**GERALD C. BARTON; WILLIAM W. VAUGHAN,**

**Defendants-Appellees.**

**Appeal from the United States District Court**
**for the Eastern District of Louisiana**

November 15, 2000

Before WOOD[*], DAVIS, and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

For the wrongful bankruptcy claim at hand, primarily at issue is the burden of proof for causation and damages. The Federal Deposit Insurance Corporation contests the summary judgment awarded Appellees. We **VACATE and REMAND.**

I.

_____

[*]United States Circuit Judge for the Seventh Circuit, sitting by designation.

Appellees Gerald C. Barton and William W. Vaughan are former officers and directors of the Oak Tree Savings Bank, S.S.B., a Louisiana-chartered savings bank. For its wrongful bankruptcy claim, FDIC maintains that Appellees breached their fiduciary duty to Oak Tree by abetting the filing in 1991 of bankruptcy petitions by six Oak Tree Subsidiaries.

Prior to its failure in 1991, Oak Tree was Louisiana's largest thrift. It was the successor to two insolvent savings and loans that its parent, Landmark Land Company, Inc., acquired at the behest of the Federal Savings and Loan Insurance Corporation. Oak Tree, wholly owned by Landmark, was the parent company to several first and second tier subsidiary corporations (Subsidiaries).

Appellees held key positions in the Landmark corporations. Barton was chairman of the board of Landmark, Oak Tree, and each of the Subsidiaries, as well as chief executive officer of Landmark and Oak Tree. Vaughan, Barton's son-in-law, was a director and officer of Oak Tree and most of the Subsidiaries, and was general counsel to the Subsidiaries.

The Subsidiaries developed, owned, and managed residential resort communities. Prior to the bankruptcy filings, the Subsidiaries received more than $986 million in financing from Oak Tree.

As a result of changes in accounting practices, pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub. L. No. 101-73, 103 Stat. 183 (codified in

scattered sections of 12 U.S.C.), Oak Tree did *not* meet certain regulatory capital requirements. Therefore, in January 1991, its directors entered into a consent agreement with the Office of Thrift Supervision (OTS), pursuant to which: the Subsidiaries were *not* to enter into any material transactions *without* prior approval from OTS; and the directors were to resign from their positions at Oak Tree and its Subsidiaries at OTS' request and consent to the appointment of a receiver for Oak Tree, *if* OTS deemed one necessary.

At directors' meetings held on 9 October 1991, approximately nine months after the consent agreement took effect, the Subsidiaries voted to seek bankruptcy protection. Appellees were either absent or abstained from these votes. Nevertheless, FDIC alleges Appellees engineered the plan. The next day, Appellees resigned from their positions at Oak Tree. And, the day after that, 11 October, the Subsidiaries filed petitions in bankruptcy court in South Carolina.

The Subsidiaries immediately obtained an injunction to prevent Oak Tree, or its receiver, from exercising control over the Subsidiaries or their assets or from exercising ownership rights over them. Immediately thereafter, on 13 October, OTS appointed the Resolution Trust Corporation (RTC) as Oak Tree's receiver.

Eleven months of litigation ensued, by which RTC sought to gain over the Subsidiaries the control to which it would have been

entitled under a FIRREA administration. In August 1992, the Fourth Circuit dissolved the injunction. *In re Landmark Land Co. of Okla., Inc.*, 973 F.2d 283, 290 (4th Cir. 1992) (concluding that the district court was without jurisdiction to enjoin RTC from exercising its ownership rights over the Subsidiaries).

RTC then removed Appellees from their positions with the Subsidiaries. But, fearing that dismissal of the bankruptcies would be even more costly and time-consuming, RTC elected to leave the Subsidiaries in bankruptcy. However, RTC did propose, and obtain, its own reorganization plan, through which Oak Tree has recovered approximately $400 million.

FDIC, as statutory successor to RTC, contends that Oak Tree has recovered substantially more under RTC's reorganization plan than it would have under the plan allegedly orchestrated by Appellees (Appellees' plan). In fact, FDIC contends that, under Appellees' plan, Oak Tree would have recovered *nothing*.

In October 1994, RTC filed this action against Appellees, claiming gross negligence arising from mismanagement and improper lending practices. RTC amended its complaint to add a claim for wrongful bankruptcy. Appellees' motion to dismiss RTC's complaint was granted, except for the wrongful bankruptcy claim. *Resolution Trust Corp. v. Barton*, No. CIV.A.94-3294, 1995 WL 241849 at *5 (E.D. La. 24 Apr. 1995). Our court affirmed. *Federal Deposit Ins. Corp. v. Barton*, 96 F.3d 128 (5th Cir. 1996).

4

In August 1997, Appellees moved for summary judgment on the wrongful bankruptcy claim. The district court denied Appellees' summary judgment motion on the issue of whether the filing of the bankruptcies was indeed wrongful and, thus, constituted a breach of Appellees' fiduciary duties. *Federal Deposit Ins. Corp. v. Barton*, No. CIV.A.94-3294, 1998 WL 169696 (E.D. La. 8 Apr. 1998).

Later, however, the district court granted Appellees' summary judgment motion on the issues of causation and damages. (For that motion, the district court assumed that the bankruptcy filings *were* wrongful.) *RTC v. Barton*, 81 F. Supp. 2d 666 (E.D. La. 1999). Therefore, this action was dismissed.

## II.

For its wrongful bankruptcy claim, FDIC contends that the district court erred by requiring it to meet a legally erroneous burden of proof on the issues of causation and damages, and by failing to find material fact issues that precluded summary judgment. In support of their summary judgment, and in addition to urging that the district court ruled correctly as to causation and damages, Appellees assert, among other things: the bankruptcy filings were *not* wrongful; and, under Louisiana law, FDIC *cannot* recover attorney's fees.

We review a summary judgment *de novo*, applying the same analysis employed by the district court. *Vielma v. Eureka Co.*, 218 F.3d 458, 462 (5th Cir. 2000). Such judgment is proper if, viewing

the summary judgment record in the light most favorable to the nonmovant, there is *no* genuine issue of material fact, *and* the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *e.g., **Madison v. Parker***, 104 F.3d 765, 767 (5th Cir. 1997).

Claiming that Appellees are liable under LA. REV. STAT. ANN. § 6:291 for grossly negligent breach of the duty of care by a corporate fiduciary, FDIC seeks damages of over $13 million for professional fees it paid to gain the control of the Subsidiaries to which it claims it was legally entitled under FIRREA. FDIC asserted in district court that, but for Appellees' wrongdoing in abetting the filing of the Subsidiaries' bankruptcies, the fees would *not* have been incurred. ***Barton***, 81 F. Supp. 2d at 668.

In awarding summary judgment to Appellees on the issues of causation and damages, the district court concluded: FDIC could *not* prove its damages, because it could *not* prove "bankruptcy was a less desirable regime financially than FIRREA administration, in terms of what it cost and what it recovered"; and FDIC could *not* prove causation, because it could *not* show that, "but for the wrongful bankruptcies (if they were in fact wrongful), the same amount would have been recovered, and the $13,000,000 or some portion of it would *not* have been expended". *Id.* at 669 (emphasis added).

Under Louisiana law, the elements for a negligence claim are fault, causation, and damages. ***Gauthe v. Asbestos Corp., Ltd.***, 703

So. 2d 763, 766 (La. Ct. App. 1997) (citing **Owens v. Martin**, 449 So. 2d 448, 450 (La. 1984)).  We turn first to causation and damages.  The fault element, which Appellees appear to advance, is discussed last.

A.

"Negligence is only actionable where it is both a cause-in-fact of the injury and a legal cause of the injury." **Carter v. Dr. Pepper Bottling Co. of Baton Rouge, Inc.**, 470 So. 2d 496, 499-500 (La. Ct. App. 1985).

If plaintiff can show he *probably* would *not* have suffered the injuries complained of but for defendant's conduct, he has met his burden of proof for cause-in-fact.  **Charpentier v. St. Martin Parish School Bd.**, 411 So. 2d 717, 720 (La. Ct. App. 1982).  *See also* **Stroik v. Ponseti**, 699 So. 2d 1072, 1077 (La. 1997) ("To the extent the defendant's actions had something to do with the injury the plaintiff sustained, the test of a factual, causal relationship is met.").  Obviously, cause-in-fact, *vel non*, involves a factual determination.

Equally obvious, legal cause, *vel non*, is a matter of law. **Paul v. Louisiana State Employees' Group Benefit Program**, 762 So. 2d 136, 143 (La. Ct. App. 2000).  The legal cause inquiry is ultimately a question of policy — whether the particular risk falls within the scope of duty.  **Id.**  The risk is *not* within the scope of duty "where the circumstances of that injury to that plaintiff

7

could *not be reasonably foreseen or anticipated*". ***Id.*** (emphasis added).

Accordingly, for causation, FDIC must prove that, but for Appellees' *alleged wrongdoing*, the collateral litigation expenses it incurred in gaining control over the Subsidiaries would have been avoided. FDIC is *not* required to show that, but for the wrongful bankruptcies, the amount recovered in the bankruptcies would have been the same as that recovered under a FIRREA administration, *and* that the $13 million, or some portion of it, would *not* have been expended. *Cf.* ***Barton***, 81 F. Supp. 2d at 669.

Restated, what FDIC might have recovered from Oak Tree's property, absent Appellees' alleged wrongful conduct, compared to what FDIC ultimately recovered from the property, after overcoming Appellees' alleged wrongdoing, is irrelevant. *See, e.g.,* RESTATEMENT (SECOND) OF TORTS § 433B cmt. b (1965); ***Hastings v. Baton Rouge Gen. Hosp.***, 498 So. 2d 713, 720 (La. 1986); ***LeJeune v. Allstate Ins. Co.***, 365 So. 2d 471, 476 (La. 1978) (all stating that plaintiff may not be charged with the impossible burden of proving to a reasonable certainty the outcome of speculative scenarios that assume the absence of defendant's misconduct). Because Appellees allegedly sought to protect their own interests at the expense of Oak Tree's by abetting the filing of the bankruptcies, RTC was forced, through litigation, to wrest control of the Subsidiaries from Appellees. Had RTC allowed the bankruptcies to proceed under

8

Appellees' plan, Appellees' alleged scheme to defeat Oak Tree's interests in the Subsidiaries would have succeeded. Instead, RTC gained control of the Subsidiaries; allowed them to remain in bankruptcy; and filed its own reorganization plan, through which Oak Tree recovered approximately $400 million. RTC's decision to allow the Subsidiaries to remain in bankruptcy is immaterial, because that decision was made subsequent to RTC's legal battle to overcome the alleged wrongful bankruptcies.

Further, FDIC has *not* alleged that bankruptcy was a less desirable regime for the Subsidiaries than an administration under FIRREA. ***Davis v. American Commercial Barge Line Co.***, No. CIV.A.98-537, 1998 WL 754541, at *2 (E.D. La. 22 Oct. 1998) ("The plaintiff is the master of her complaint."). Instead, FDIC has alleged that, had Appellees *not wrongfully filed* the bankruptcies, FDIC would *not* have incurred the $13 million in professional fees to gain control of the Subsidiaries.

Appellees do *not* appear to contest "legal cause" — that FDIC's injury was a foreseeable result of their alleged wrongdoing. In any event, we hold that it was foreseeable. And, because there are material fact issues regarding whether Appellees' alleged wrongdoing was a *cause in fact* of FDIC's damages, summary judgment should *not* have been granted Appellees on this issue.

B.

9

Under Louisiana law, damages are awarded in an attempt to place the injured party in the condition he would have occupied but for the injury complained of. *Shell Petroleum Corp. v. Scully*, 71 F.2d 772, 775 (5th Cir. 1934). *See also* *Scurria v. Hodge*, 720 So. 2d 460, 466 (La. Ct. App. 1998) ("The basic theory of reparation for the breach of a fiduciary duty is that the damaged party should be returned as nearly as possible to his condition prior to the act causing the damage.").

Damages must be proved with "legal certainty". *Craig v. Burch*, 228 So. 2d 723, 731 (La. Ct. App. 1969). FDIC is seeking the expenses it incurred to gain control over the Subsidiaries. Thus, FDIC must show to a "legal certainty" how much it expended in the collateral litigation to gain such control. FDIC is *not* required to prove that it would have recovered more under a FIRREA administration than it did via the bankruptcies. *Cf. Barton*, 81 F. Supp. 2d at 669.

Again, what FDIC might have recovered from Oak Tree's property absent Appellees' alleged wrongdoing compared to what it ultimately recovered is irrelevant. Further, it did *not* seek such damages, perhaps due to their speculative nature. *See* *Bourdette v. Sieward*, 107 La. 258, 31 So. 630 (La. 1902) (speculative damages *cannot* be recovered). As the district court noted: "The problem is, we do *not* know, nor can we ever know, what would have been recovered, and

10

what it would have cost to do so, through [a] FIRREA administration". **Barton**, 81 F. Supp. 2d at 669.

## C.

As alternative grounds for upholding the summary judgment, Appellees contend, as they did in district court, that FDIC's claim for attorneys' fees is *not* cognizable under Louisiana law. They also *appear* to contend, contrary to the summary judgment denied them on this point, that they are *not*, and *cannot be*, at fault. Of course, we may affirm a summary judgment on grounds other than those relied on by the district court. *E.g.,* **Lady v. Neal Glaser Marine, Inc.,** No. 99-60382, 2000 WL 1405075, at *2 (5th Cir. 26 Sept. 2000).

## 1.

In Louisiana, attorney's fees usually are *not* allowed in civil actions in the absence of a statute or contract. **Smith v. Atkins**, 218 La. 1, 7, 48 So. 2d 101, 103 (La. 1950). However, the Louisiana Supreme Court has awarded attorney's fees as damages in legal malpractice cases despite the absence of statutory or contractual provisions allowing for their recovery. *See, e.g.,* **Ramp v. St. Paul Fire & Marine Ins. Co.**, 263 La. 774, 788, 269 So. 2d 239, 244-45 (La. 1972). Similarly, fees incurred in bankruptcy have been allowed as damages for the wrongdoing that caused the bankruptcy. **Pelts & Skins Export, Ltd. v. State Dep't of Wildlife & Fisheries**, 735 So. 2d 116, 128 (La. Ct. App. 1999). *See also*

11

*Orange Nat'l Bank v. Goodman & Beer Co.*, 150 So. 676, 677 (La. Ct. App. 1933) ("Lawyers' fees incurred in recovering property which had been improperly seized in a suit against another person, may be recovered back in a suit for damages for the illegal seizure." (quoting *Dyke v. Walker*, 5 La. Ann. 519 (1850))).

In sum, the fees are a proper form of damages for this wrongful bankruptcy claim.

2.

As noted, as an alternative basis for upholding the summary judgment, Appellees *appear* to contend that they are *not*, and *cannot be*, at fault. However, as reflected *supra*, and as the district court correctly concluded, there is a material fact issue concerning whether Appellees abetted filing the bankruptcies to harm Oak Tree. *See* **Barton**, 1998 WL 169696, at *6 (Appellees' "state of mind, ... whether [Appellees] 'schemed' to harm Oak Tree, is hotly contested"). In the light of this material fact issue, and at this summary judgment stage, we decline to reach Appellees' numerous other related contentions, such as preemption.

III.

For the foregoing reasons, we **VACATE** the summary judgment and **REMAND** this case for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

12