**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

No. 02-60284

---

TANGO TRANSPORT,

                                        Plaintiff– Counter Defendant– Appellee,

versus

HEALTHCARE FINANCIAL SERVICES LLC,

                                        Defendant – Counter Claimant – Appellant.

---

Appeal from the United States District Court
for the Southern District of Mississippi

---

March 12, 2003

Before GARWOOD, JONES, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

The disputed issues on appeal turn on whether our holding in Hermann Hosp. v. MEBA Medical & Benefits Plan, 845 F.2d 1286, 1289 (5th Cir. 1988) ("Hermann I") limits derivative standing to sue for ERISA benefits only to health care providers who have a valid assignment from a plan participant or beneficiary. The district court construed our decision in Hermann I to limit the assignment of ERISA benefits to healthcare providers. For the reasons that follow, we decline, once

again, to read into ERISA an anti-alienation provision that prevents assignments of enforcement rights of employee welfare plans. Rather, we hold that the assignee of a health care provider who has a valid assignment from the plan participant or beneficiary has derivative standing to bring a cause of action to recover benefits from an ERISA-governed employee welfare plan. Accordingly, we REVERSE and REMAND.

## I. **Factual and Procedural Background**

Plaintiff/Counter Defendant Tango Transport ("Tango") leased a tractor-trailer from Rocket Transportation. Alice Huff ("Huff"), a Rocket Transportation employee, was hired to drive the tractor-trailer. Huff became a participant in a medical benefits plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. (ERISA) and sponsored by Tango. When the tractor-trailer lease expired on March 27, 1997, Huff left Rocket Transportation for Jackson Rapid Delivery Services ("Rapid"). Rapid maintained a group health plan through Blue Cross and Blue Shield, under which Huff acquired medical coverage on July 1, 1997.

On four occasions in June and in September 1997, Huff received medical treatment from Mississippi Baptist Medical Center ("MBMC") at a total cost of $104,152.64. On each visit, Huff executed an assignment of benefits to MBMC. The relevant language of each assignment provided:

> I hereby assign payment of hospital benefits directly to Mississippi Baptist Medical Center herein specified and otherwise payable to me but not to exceed the hospital's regular charges for this period of hospitalization. This assignment also applies to attending and consulting physicians. I understand I am financially responsible for charges not covered by the assignment. This assignment covers all insurance claims, including Medigap, filed by the hospital and physician for this admission.

On March 19, 1998, MBMC, in turn, assigned Huff's outstanding accounts to Healthcare Financial Services ("Healthcare"). The relevant language of the assignment provided:

2

I, Richard M. Williams, General Manager of MBMC – OP, in consideration of the sum of One Dollar ($1.00), and other good and valuable consideration, the receipt of which is hereby acknowledged do hereby sell, assign and transfer Healthcare Financial Services, LLC, the following described accounts totaling [$104,152.64] now due and owing by Alice Huff. . . . With full power unto the said Heathcare Financial Services, LLC, and his assigns, to sue for, collect and give acquittance for the same, to his or their own use.[1]

Healthcare filed suit against Huff for the balance on those accounts, and Huff filed a petition for bankruptcy relief, eventually obtaining a discharge of debt under 11 U.S.C. § 727. Healthcare then sought reimbursement of Huff's medical expenses from Tango. Tango responded by filing a declaratory judgment action in the district court seeking a declaration that Healthcare had not received a valid assignment and therefore, did not have standing to sue Tango. Healthcare counterclaimed seeking payment of insurance claims and damages for breach of fiduciary duty. Both parties moved for summary judgment on Healthcare's counterclaim. The district court granted summary judgment to Tango finding that Healthcare does not have standing to sue for insurance benefits under ERISA. Healthcare now appeals.

II. **Standard of Review**

We review the district court's grant of summary judgment de novo. Young v. Equifax Credit Info. Servs. Inc., 294 F.3d 631, 635 (5th Cir. 2002). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

---

[1]On March 19, 1998, MBMC executed two separate assignments to Healthcare, one to collect $51,591.51 and the other for $52,561.13 for a total of $104,152.64. Both contained the identical language provided.

III.    **Discussion**

The two issues on appeal are: 1) whether Healthcare has derivative standing to sue Tango under ERISA and 2) whether Healthcare is an agent of MBMC for the purposes of bringing a claim for the payment of insurance claims. We discuss each issue in turn.

A.  Standing under ERISA

To examine whether Healthcare has derivative standing under ERISA, we must first determine whether Huff has standing to enforce plan benefits under ERISA. Second, we must determine whether MBMC has standing under ERISA by way of Huff's assignment of her benefits. Finally, we must decide whether MBMC's assignment of its benefits to Healthcare confers standing under ERISA.

1.  Huff has standing to enforce plan benefits under ERISA

Section 1132(a) confers standing to enumerated parties, namely, plan participants bring a civil action to enforce provisions of ERISA. ERISA provides that "[a] civil action may be brought by a participant or beneficiary ... to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1). A "participant" is "an employee or former employee of an employer, . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan." Id. at § 1002(7). A "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." Id. at § 1002(8). In this case, Tango sponsored an ERISA health benefits plan for Huff, a former employee. Thus, Huff is a plan participant who has independent standing to seek enforcement of her rights and recover

4

benefits under the terms the plan as provided by ERISA. Huff assigned, most, if not all of those rights to MBMC.[2]

    2. MBMC has standing under ERISA

      a. Standing

ERISA contemplates two types of employee benefit plans -- employee welfare plans and employee pension plans. See 29 U.S.C. § 1002(1), (3). An "employee welfare benefit plan" or "welfare plan" is "a plan, fund, or program [which] was established for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . medical, surgical, or hospital care benefits." Id. at § 1002(1). The ERISA plan at issue in this case is a welfare benefit plan. The statute also provides for enforcement mechanisms, including a cause of action against plan administrators for breaches of fiduciary duty and for the enforcement of certain notice requirements. Id. at §§ 1109, 1132(c). As discussed supra, standing to bring such claims, however, is limited to participants, beneficiaries, the Secretary, or fiduciaries. See Id. at § 1132(a). Nevertheless, this Court, like many of our sister Circuits, recognizes derivative standing which permits suits in the context of ERISA-governed employee welfare benefit plans, to be brought by certain non-enumerated parties. See Hermann Hosp. v. MEBA Medical & Benefits Plan, 845 F.2d 1286, 1289 (5th Cir. 1988) ("Hermann I"); I.V. Servs. of Am., Inc. v. Trustees of the Am. Consulting Eng'rs Council Ins. Trust Fund, 136 F.3d 114, 117 n.2 (2d Cir. 1998); Cagle v. Bruner, 112 F.3d 1510, 1515 (11th Cir. 1997); Yarde v. Pan Am. Life Ins. Co., No. 94-1167, 1995 WL 539736 at *5 (4th Cir. Sept. 12, 1995); Lutheran Med. Ctr. of Omaha, NE v. Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan, 25 F.3d 616, 619-20 (8th Cir. 1994); Cromwell v. Equicor-

---

[2]There is some dispute as to the scope of Huff's assignment to MBMC, discussed infra.

Equitable HCA Corp., 944 F.2d 1272, 1277-78 (6th Cir. 1991); Misic v. Bldg. Serv. Employees Health & Welfare Trust, 789 F.2d 1374, 1378 (9th Cir. 1986).

In Hermann I, this Court permitted a hospital that had obtained an assignment of benefits from a patient to sue the patient's ERISA-governed health plan for reimbursement. Although the hospital was not an enumerated party under section 1132, this Court found that the hospital had standing derived from its status as the assignee of the beneficiary's welfare plan. 845 F.2d at 1289-90. The Court noted that Congress included an anti-assignment provision pertaining to ERISA-governed pension plans. Id.  As we explained Congress was silent with regard to such a provision for health care benefits. There is no "language in the statute which even remotely suggests that such assignments are pro scribed or ought in any way to be limited." Id. As a matter of policy, the Court further reasoned that "[a]n assignment to a healthcare provider facilitates rather than hampers the employee's receipt of health benefits." Id. at 1289.

Mirroring the same reasoning espoused in Hermann I, the Supreme Court observed that an assignment of an employee welfare benefit plan is not expressly barred under ERISA. Mackey v. Lanier Collection Agency & Service, Inc., 486 U.S. 825 (1988). In Mackey, a collection agency obtained money judgments against several plan participants who were trustees of an ERISA-governed employee welfare benefit plan. Id. at 827. To collect the money judgments, the collection agency sought to garnish the plan benefits under state garnishment law.  Id. at 828. The plan participants argued that the state law method of enforcement – garnishment – was preempted by ERISA. The Supreme Court determined that the collection agency was entitled to seek garnishment and its analysis rested on Congress's express intent to bar assignments and alienation of ERISA pension plans. Section 1056(d) of ERISA provides that "[e]ach pension plan shall provide that benefits

6

provided under the plan may not be assigned or alienated." Id. at 836. It noted that "Congress did not enact any similar provision applicable to ERISA welfare benefit plans, such as the one at issue in this case." Id. (emphasis in original). The Supreme Court further explained that "such omissions are significant ones" because Congress "had before it a provision to bar" the same assignments but chose not to do so. Id. at 837. Thus, it held that "ERISA does not forbid garnishment of an ERISA welfare benefit plan, even where the purpose is to collect judgments against plan participants." Id. at 841.

Like the plans in Hermann I and Mackey, the plan in this case is an ERISA-governed employee welfare benefit plan. Under Hermann I, an assignee of a plan participant has derivative standing to bring a cause of action for enforcement under ERISA. If MBMC has a valid assignment from Huff, a plan participant, then MBMC has derivative standing to bring a cause of action against Tango under ERISA.

b. Assignment

Tango argues that the assignment of insurance benefits to MBMC did not include Huff's breach of fiduciary duty claim against Tango because the assignment language only covers direct payment of benefits to MBMC and all insurance claims. In Hermann Hospital v. MEBA Medical & Benefits Plan ("Hermann II"), this Court concluded that the "right to sue for payment of benefits provided by [the hospital] belonged solely to [the hospital] as a result of the assignment." 959 F.2d 569, 574 (5th Cir. 1992).[3] Thus, we reiterated our holding in Hermann I that the hospital "has standing as an assignee to seek recovery of payment for the benefits it provided." Id. at 576. In so holding, we explained that "the authorization language represents nothing more than cautious and prudent 'belt

_____

[3]Hermann I was remanded to the district court to determine whether the hospital had a valid assignment from the plan beneficiary. On remand, the district court dismissed and the hospital appealed resulting in Hermann II.

7

and suspenders' drafting." Id. at 574. Although there is some dispute as to the scope of Huff's original assignment to MBMC, both parties concede that Huff assigned at least some hospital benefits to MBMC and that MBMC, in turn, executed a valid assignment of those benefits to Healthcare. The district court did not rule on the scope of Huff's assignment to MBMC and therefore, this issue is not properly before this Court on appeal.[4] The dispute on appeal centers on Healthcare's standing as an assignee to assert Huff's claim.

### 3. Healthcare has derivative standing to sue Tango.

The question of Healthcare's standing turns on the construction given to Hermann I. Tango seeks a narrow construction of Hermann I. According to Tango, Hermann I, did not recognize a theory of derivative standing based on the unrestricted ability to assign welfare plan benefits, instead it simply created a judicial exception in favor of health care providers to section 1132. Tango's argument is unpersuasive. In holding that ERISA does not prohibit the assignment of welfare benefits to a hospital, this Court noted that there is no "language in the statute which even remotely suggests that such assignments are proscribed or ought in any way be limited." 845 F.2d at 1289 (emphasis added). Healthcare's assertion that Hermann I extends to it derivative standing is based on the well established principle that the assignee is placed in the same position as the assignor. Healthcare argues that such derivative standing to recover health care benefits from ERISA-governed welfare plans

---

[4]In its Complaint to the district court, Tango sought inter alia, "a declaration that there was not a valid assignment between Alice Huff and Mississippi Baptist Medical Center since there were no insurance benefits to assign from Alice Huff to Mississippi Baptist Medical Center, and that any such assignment would not have included her claims or cause of action against Tango." Because the district court concluded that "Healthcare lacks standing to bring a claim for benefits under ERISA," it sua sponte granted to Tango a declaration that "Healthcare cannot bring a claim against Tango for insurance benefits allegedly owed under the subject ERISA-qualified plan." The district court, then, mooted "all other declaratory relief requested by Tango."

8

advances the underlying policy goals of ERISA. We find that allowing the health care provider to use an assignee to recover ERISA benefits does nothing to frustrate the goals or purposes of ERISA.

Consistent with the plain language of section 1132(a), ERISA confers derivative standing to enforce rights under an employee welfare benefit plan. Hermann I, 845 F.2d at 1289. Nowhere in Hermann I did we suggest that our construction of ERISA created a judicial exception to the enumeration of parties in section 1132 designated standing to sue under ERISA. Rather, our decision to extend derivative standing to the hospital was grounded in the structure of ERISA, specifically, the "absence of an anti-assignment clause applicable to health benefits." Id. Moreover, other Circuits that evoke derivative standing comport with similar reasoning. For example, citing Hermann I, the Sixth Circuit noted that "[t]he underlying premise of the derivative standing doctrine is that ERISA health care benefits are assignable." Cromwell, 944 F.2d at 1277-78. Hermann I extends derivative standing based on the structure of ERISA and "the principle that the assignee stands in the shoes of his assignor." 845 F.2d at 1290 n.14.

In addition to following Hermann I, granting Healthcare derivative standing is also consistent with the Supreme Court's decision in Mackey, 486 U.S. 825 (1988). As we discussed supra, the Supreme Court in Mackey used similar reasoning when it held that ERISA's anti-assignment/alienation provisions for pension benefit plans did not preclude a collection agency from attaching welfare benefit plans. Id. at 836. Acco rding to the Supreme Court, the absence of such anti-alienation protection with respect to ERISA welfare benefit plans must mean that the benefits of those plans are freely alienable. Id. at 837. Because ERISA-governed welfare plans are alienable, to hold that the original participant can alienate them, but that a subsequent assignee cannot, would make little sense. It is likewise nonsensical for an original health care provider assignee to receive both welfare benefits

9

and the right to enforce them via derivative standing, but a subsequent assignee can receive only the benefits, but not the right to sue to enforce them.

Whatever rights Huff assigned to MBMC, those rights "to sue for payment provided by [the hospital] belong solely" to MBMC. Hermann II, 959 F.2d at 573. MBMC was free to assign its rights to Healthcare placing Healthcare in its shoes to enforce those rights under ERISA.[5] As the Supreme Court in Mackey explained, a collection agency is entitled to seek garnishment because "ERISA does not provide an enforcement mechanism for collecting judgments won" in civil enforcement actions. "[O]therwise, there would be no way to enforce such a judgment won against an ERISA plan." Here, MBMC chose to assign to Healthcare its rights to sue Tango and to collect debts due on Huff's accounts. In this case, the assignee takes what the assignor had.

As we noted in Hermann I, denying derivative standing to health care providers would harm participants or beneficiaries because it would "discourage providers from becoming assignees and possibly from helping beneficiaries who were unable to pay them 'up-front.'" 845 F.2d at 1290 n.13. Likewise, granting derivative standing to the assignees of health care providers helps plan participants and beneficiaries by encouraging providers to accept participants who are unable to pay up front. Conversely, to bar health care providers from assigning their rights under ERISA, and shifting the risk of non-payment to a third-party, would chill health care providers' willingness to accept a patient. Third parties like Healthcare will only be willing to purchase an assignment from a health care provider if they can be assured that they will be afforded standing to sue for reimbursement. We need not reach whether all assignees or sub-assignees of plan participants have standing to sue. In this case,

---

[5]We note that the method of civil enforcement chosen by MBMC is immaterial to this analysis.

10

however, rather than harming participants of ERISA-governed welfare plans, extending Hermann I will almost surely benefit them.

B.  Healthcare as an agent of MBMC

Healthcare argues that it also has derivative standing as an agent of MBMC. Relying on state law, the district court found that Healthcare had filed suit on its own behalf and therefore, cannot be considered an agent of MBMC. In this appeal, Healthcare maintains that the district court erred in applying state law to determine its status as an agent, and instead, the district court should have applied federal common law. We need not decide this issue, however, because both parties agree that MBMC assigned its full rights to Healthcare. We have already held that Healthcare has derivative standing as an assignee of MBMC.

IV.  **Conclusion**

There is no express language in the statute that prohibits a health care provider who has a valid assignment from the plan participant or beneficiary to subsequently assign its rights to enforce an ERISA-governed employee welfare benefit plans. To read an anti-alienation provision into section 1132 of ERISA would hinder the underlying goals of ERISA and the effective provision of medical services. Healthcare has derivative standing to enforce the very same rights MBMC had as an assignee of Huff's benefits. Accordingly, we REVERSE the district court's holding that Healthcare does not have derivative standing and REMAND to the district court to determine the scope of Huff's assignment to MBMC consistent with this opinion.

REVERSED and REMANDED.