**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**September 9, 2003**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 02-31093
_____

UNITED STATES SMALL BUSINESS ADMINISTRATION,
as receiver, on behalf of SCDF INVESTMENT CORPORATION

Plaintiff-Appellee,

versus

MARVIN BEAULIEU; Et. Al.,                                                    Defendants,

WILLIAM HARRISON,
SYLVIA MOUTON

Defendants – Appellants.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 01-CU-1164

_____

Before HIGGINBOTHAM, STEWART, and PRADO, Circuit Judges.

PER CURIAM:[*]

Sylvia Mouton and William Harrison (the "Appellants") appeal from the district court's

granting of the Small Business Administration's ("SBA") motion for summary judgment finding the

Appellants jointly and severally liable[1] to SBA for $307,711.50.

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] While the district court held the Appellants jointly and severally liable, it is not clear whether
such liability could be found independent of a breach of fiduciary duty, which would put the

## FACTUAL AND PROCEDURAL BACKGROUND

SCDF Investment Corporation ("SCDF") was chartered as a Louisiana corporation on December 21, 1970, and SCDF was granted a license as a Specialized Small Business Investment Company ("SSBIC") by the United States Small Business Administration ("SBA") in 1973. Thus, SCDF became subject to mandatory compliance with the Small Business Investment Act (the "Act"). In 1973, SCDF incorporated the Act's regulations as part of its articles of incorporation. Marvin Beaulieu ("Beaulieu") was president of SCDF from August 1985 through August 1992. Appellant William Harrison ("Harriso n") was president of SCDF from 1994 until 1998. From 1989 through 1992, Sylvia Mouton ("Mouton") served SCDF in various capacities as accountant, treasurer, chief financial officer, and chairperson of its finance committee.

In 1984, SCDF and Claiborne County, Mississippi each lent Port Gibson Electric Manufacturing Company, a Mississippi corporation ("Port Gibson"), $300,000 to purchase Mississippi real property (the "PG Property") secured by a first mortgage. SCDF refinanced this loan in 1989 and made a separate $100,000 equity investment in Port Gibson. SDF, an "associate"[2] of SCDF, simultaneously made a $500,000 loan to Port Gibson, and in return obtained a first mortgage on the PG Property as collateral. Through a document prepared by an SCDF paralegal, reviewed by an outside attorney, and signed by Beaulieu, SCDF subordinated its joint first mortgage to SDF. Beaulieu, however, did not seek approval or authorization from anyone at SCDF before executing the subordination, nor did he inform anyone at SCDF of its occurrence. In addition, Mouton

Appellants outside the protection of the corporate veil.

[2] 13 C.F.R. § 107.3 (a)(1) provides:
  "Associate of a Licensee" means: An officer, director, employee or agent of a corporate Licensee.

2

approved the refinancing of SCDF's 1984 loan with the requirement that SCDF maintain its first mortgage. Despite the subordination, SCDF listed the refinanced Port Gibson loan as secured by its mortgage on the PG Property in subsequent Forms 468 (the "Financial Report") submitted annually to SBA.

On February 26, 1992, SDF acquired in foreclosure the PG Property, thus extinguishing SCDF's subordinated mortgage. SCDF, however, reported in subsequent Financial Reports that it had acquired the property in foreclosure. Mouton either signed, or assisted in the preparation of, the Financial Reports submitted to SBA. Also in 1992, SBA initiated a receivership action against SCDF, but following negotiations between the two companies a settlement agreement was reached allowing both SCDF to maintain its current management and SBA to halt the receivership.

In August 1994, Harrison began his tenure as SCDF president. Soon after arriving, Harrison retained an outside consultant to perform a valuation of SCDF's portfolio assets, which included loans and acquired collateral, due to the fact that SCDF had filed for bankruptcy shortly before his tenure. The valuation listed the PG Property as an SCDF asset with an appraised value of $337,400. In February 1995, Harrison reviewed the valuation and sent a copy to SBA. Harrison reasoned that a title search on any of SCDF's assets seemed unnecessary because he was not aware of any problems with relying on the Financial Reports prepared by his predecessors. On June 15, 1998, SBA was appointed receiver of SCDF. In a letter dated, September 8, 1998, Harrison informed SBA of the subordination, as well as the February 1992 foreclosure by SDF.

Based on the aforementioned, SBA moved for summary judgment on August 16, 2002. The district court granted summary judgment on SBA's claims of breach of fiduciary duties and ultra vires acts, but denied summary judgment grounded on SBA's negligent misrepresentation theory. In

3

addition, the district court entered a $307,711.50 judgment, jointly and severally, against Beaulieu, Harrison, and Mouton. Harrison and Mouton now appeal the district court's judgment.[3]

## DISCUSSION

I.     Standard for Summary Judgment

This Court reviews the grant of summary judgment de novo. See Am. States Ins. Co. v. Synod of the Russian Orthodox Church OutSide of Russia, 335 F.3d 493 (5th Cir. 2003). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); See also Tango Transp. v. Healthcare Fin. Servs. LLC., 322 F.3d 888, 890 (5th Cir. 2003). A genuine issue of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. Id. Questions of law are reviewed de novo. Id.

II.     SBA's Causes of Action on Appeal

A question exists whether Beaulieu's actions in the subordination caused the $100,000 equity investment loss, but because he did not appeal we choose not to discuss his involvement unless its relates to analyzing the Appellant's liability. We will discuss these legal theories separately.

A.     Breach of Fiduciary Duty

Under SBA regulations, a breach of fiduciary duty between an SSBIC and its officers is made unlawful pursuant to 5 U.S.C. § 687f (b).[4] SBA claims that Appellants breached their fiduciary duty:

---

[3] Beaulieu was not specified within the notice of appeal as a party taking an appeal. See F.R.A.P. Rule 3(c)(1)(A). Neither has he filed a separate notice of appeal required by F.R.A.P. Rule 3(a) and Rule 3(c)(2) from which an intent to appeal is clear. Consequently, appellate jurisdiction as to Beaulieu is absent.

[4] 15 U.S.C. § 687f (b) provides that:

4

(1) by causing SCDF to subordinate its first position on the PG Property, and (2) filing the false

Financial Reports with SBA. The district court held that while the SBA regulations establish which

actions taken by officers of an SSBIC will be a violation, Louisiana law establishes when such

violations constitute a breach of fiduciary duty. According to Louisiana law, a breach of fiduciary

duty constitutes: (1) existence of a fiduciary duty, (2) a violation of that duty by the fiduciary, and

(3) damages resulting from the violation. Omnitech International, Inc. v. The Clorox Co., 11 F.3d

1316, 1330 F. 20 (5th Cir.), cert. denied, 513 U.S. 815 (1994); accord Brockman v. Salt Lake Farm

Partnership, 768 So.2d 836, 844 (La. App. 2000), writ denied, 777 So.2d 1234 (La. 2000).

Subordination of the PG Property

SBA alleges that Appellants breached their fiduciary duty by causing the subordination.

Specifically, SBA asserts that the Appellants violated 13 C.F.R. § 107.903(c)(1).[5] While the record

It shall be unlawful for any officer, director, employee, agent, or other participant in the management or conduct of the affairs of a licensee to engage in any act or practice, or to omit any act, in breach of his fiduciary duty as such officer, director, employee, agent, or participant, if, as a result thereof, the licensee has suffered or is in imminent danger of suffering financial loss or other damage.

[5] 13 C.F.R. § 107.903(c)(1) provides:

A Licensee may provide Financing to a non-Associate also Financed by an Associate of such Licensee contemporaneously or within six months before or after the Licensee's Financing, but only on terms not less favorable to the Licensee than to the Associate. Licensee shall retain written evidence of the entire transaction. Where the Associate's Financing is of a different kind, the burden shall be on the Licensee to show that the terms of its Financing were at least favorable as those of its Associate's Financing.

Personally liability of an officer or director under § 107.903(c)(1) is pursuant to 15 U.S.C. § 687(a) which provides:

Wherever a licensee violates any provision of this chapter or regulation issued thereunder by reason of its failure to comply with the terms thereof or by any reason

5

and Louisiana law[6] undisputably show that the Appellants were officers of SCDF, and thus, owed a fiduciary duty to it, the record is devoid of any evidence conclusively showing that either Appellant is liable for violating 15 U.S.C. § 687(a).[7]

While the district court may have imputed that Mouton knew of or was involved in the subordination because of her position as CFO, on this record such an inference is unwarranted. See Ramirez v. City of San Antonio, 312 F.3d 178, 181 (5th Cir. 2002) (in reviewing summary judgment, any inferences drawn from the evidence in the record must be done in a light most favorable to the non-moving party). The record is devoid of SCDF board minutes where the subordination was either approved or discussed. Furthermore, the minutes of the finance committee, chaired by Mouton, do not indicate that the subordination was discussed. In addition, the finance committee minutes indicate that SCDF's maintaining a first mortgage on the PG Property was a condition for refinancing the 1984 loan. Mouton testified in her deposition that she was unaware of the subordination of SCDF's first

of its engaging in any act or practice which constitutes or will constitute a violation thereof, such violation shall be deemed to be also a violation and an unlawful act on the part of any person who, directly or indirectly, authorizes, orders, participates in, or causes, brings about, counsels, aids, or abets in the commission of any acts, practices, or transactions which constitute or will constitute, in whole or in part, such violation.

[6]Louisiana Corporations Law La. R.S. 12:91 states:

[O]fficers and directors shall be deemed to stand in a fiduciary relation to the corporation and its shareholders, and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment and skill which ordinarily prudent men would exercise under similar circumstances in like positions.

[7] *Supra* note 5.

6

mortgage. Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 255, 106 S.Ct. 2505, 2513 (1986). Because the record does not conclusively show that Mouton knew of or caused the subordination, we conclude SBA was not entitled to summary judgment and find that a genuine issue of material fact exists as to whether she caused the subordination. We reach the same conclusion as to Harrison because the record is similarly inconclusive regarding his connection to SCDF at the time of the subordination. A reasonable juror could resolve these factual disputes in favor of the nonmovants, thus we reverse the district court's grant of summary judgment and remand for trial.

As to the issue of damages, under Louisiana law, a breach of fiduciary duty is considered *per se* negligence. Federal Sav. & Loan Ins. Corp. v. Shelton, 789 F.supp. 1360, 1367 (M.D. La. 1992). In order for damages to be awarded in a negligence action a plaintiff must show both actual and legal causation. FDIC v. Barton, 233 F.3d 859, 865 (5th Cir. 2000). Actual causation is defined as "but for" causation, meaning absent the defendant's conduct, damages would not have occurred. Id. at 864. If a plaintiff can show that it probably would not have suffered damages, absent the defendant's conduct, its burden of proof for cause in fact is met. Id. Legal causation is defined as whether it was foreseeable by a defendant that his actions could cause the damage the plaintiff suffered. Id.

The district court awarded the entire amount of damages claimed by SBA of $307,711.50. This amount comprised the cost basis of the Port Gibson property at $207,711.50 and the $100,000 equity investment SCDF made into Port Gibson.

We are not convinced, however, that the loss stemmed from the Appellants' actions. The district court correctly found that Beaulieu's actions caused the $207,711.50 loss. The court reasoned that if the subordination, caused by him, had not occurred, SCDF would have maintained

7

its first mortgage. Thus, SCDF could have recouped its loan when Port Gibson defaulted, rather than SDF foreclosing on the property, and extinguishing SCDF's loan and second mortgage. See e.g. Acadian Bank v. Foret, 602 So.2d 1097, 1098 (La. App. 1 Cir. 1992) (mortgages must be paid according to their rank); Central Progressive Bank v. Doerner, 365 So.2d 263, 264-65 (La. App. 1 Cir. 1978) (secondary mortgage holder entitled to proceeds realized at foreclosure sale initiated by primary mortgage holder only to extent that such proceeds were in excess of the balance due the primary mortgage holder). Therefore, SBA has shown that but for the subordination it probably would not have lost the property. However, SBA has failed to show how either Appellant was involved with or had knowledge of the subordination. Thus, an issue of fact exists as to whether the actions of either Appellant was the actual cause of the $207,711.50 loss.

Additionally, we are not certain how legal causation as to the Appellants has been established either. While legal causation undisputedly exists as to Beaulieu, nothing in the record shows that either Appellant had any involvement with the subordination. We therefore are not certain as to how the district court found that either Appellant committed acts which they could have foreseen as causing the $207,711.50 loss. Thus, an issue of fact exists with regards to legal causation as to the Appellants as well.

While the causation elements against Beaulieu have been shown for the $207,711.50 loss, it is not clear how the subordination also caused the $100,000 loss. The district court opined no adequate connection between the equity investment and the PG Property to show that but for the subordination, the equity investment would not have been lost. To determine if "but for" causation for the equity investment exists we must ask if SCDF had not subordinated its position and foreclosed on the PG Property, would it have prevented the $100,000 loss? While SCDF may have recovered

the PG Property and avoided the loss of $207,711.50, it is not certain that it would have recovered the $100,000 equity investment. The equity investment was a separate transaction, and under well accepted corporate principles, an equit y investment, unlike a loan or debt investment, does not include among its rights a guaranteed return of the principal. See Melvin A. Eisenberg, Corporations And Other Business Organizations: Cases And Materials, 111 (8th ed. 2000) ("from a legal point of view...unlike a bond...stock does not contain any promise of repayment of the original investment"). Additionally, SBA cannot establish legal causation as to either Appellant for the $100,000 because it has not shown how it was foreseeable that the subordination could have resulted in the loss of the equity investment. In short, it is unclear what actions, if any, make the appellants liable for the $100,000. Thus, an issue of fact exists as to how the Appellants caused the $100,000 loss.

Filing of the False Financial Reports

While the district court's conclusion that the Appellants violated 13 C.F.R. §107.906(b) was correct, we are not certain as to whether it was because the Appellants made a knowingly false statement or failed to state a material fact.[8]

While the Appellants may have violated 13 C.F.R. § 107.906(b) by the filing of the erroneous Financial Reports, it is not clear how the damages SBA prays for flowed from these filings. At the moment the subordination was executed SDF had a first mortgage on the PG Property. Therefore, even if SBA had thereafter learned of the subordination, took receivership as well as foreclosed on

---

[8] 13 C.F.R. § 107.906(b) provides:
It is a violation to submit documents to the SBA which contain: (1) any false statement that was knowingly made; (2) any misrepresentation of a material fact; or (3) any failure to state a material fact. A material fact is defined as any fact which is necessary to make a statement not misleading in light of the circumstances under which the statement is made.

the property, it would not have prevented the loss. This is because a foreclosure on a secondary mortgage does not extinguish a primary mortgage. See e.g. Acadian Bank, 602 So.2d at 1098; Central Progressive Bank, 365 So.2d at 264-65. If SBA had become SCDF receiver and obtained possession of the property through foreclosure in 1989 it would have been subject to SDF's first mortgage. SBA would have been required to keep SDF's $500,000 loan up to date to avoid SDF's foreclosure. Therefore, because it was the subordination that was the actual and legal cause of the loss of the PG Property, and it is not clear from the record how the filing of the erroneous Financial Reports was the actual cause of the loss, an issue of fact exists for both Appellants as to actual causation in relation to the PG Property for filing the false Financial Reports.

In addition, SBA failed to show legal causation of the Appellants actions as well. To satisfy legal causation SBA was required to show that the Appellants could have foreseen that the filing of the false Financial Reports could result in damages being incurred by SCDF. However, it was not the filing of the false reports that caused the damages, it was the subordination. Thus, a material issue of fact also exists as to whether legal causation was present for the Appellants' actions as well.

It is also not clear how there was an absence of any material issue of fact as to actual and legal causation for the $100,000 loss of the equity investment from the filing of the false Financial Reports, and therefore, this issue should also be resolved at trial.

B.      Ultra Vires acts

The district court concluded that since other courts have held corporate officers of SSBIC's, like SCDF, liable for damages arising from ultra vires acts which violate SBA Regulations, See SBA v. CitiBank, 1997 WL 45514, at *10 (S.D.N.Y. Feb. 4, 1997); SBA v. Segal, 383 F.Supp. 198 (D. Conn. 1974), it would also hold the Appellants personally liable for ultra vires acts even if the

Appellants were found to have not breached any fiduciary duty. Because it is undisputed that SCDF incorporated SBA regulations prohibiting subordination and filing of false Financial Reports, the district court was correct in holding that a violation of any one of these statutes would, necessarily, be an ultra vires act. However, the cases the district court cites do not appear to preclude the requirement that a causal nexus be shown between the ultra vires acts and the damages claimed. CitiBank cited Segal, 1997 WL 45514, at *10, which in turn pointed to previously established jurisprudence regarding ultra vires acts in general to find an officer personally liable. 383 F. Supp at 203 (citing Cooper v. Hill, 94 F. 532 (8th Cir. 1899) (personal liability for officers who cause bank to commit ultra vires acts pursuant to general law); Broderick v. Marcus, 152 Misc. 413, (Sup. Ct. 1934) (personal liability for directors who are involved in causing bank to use funds outside of its authority provided by the New York State laws governing banking corporations). Neither of these cases appear to exclude the general proposition that before a person can be held liable for his acts, it must also be shown that his acts in fact have caused damage. Because we are not certain that a causal nexus between conduct and damages is inherently unnecessary, it is unclear whether merely finding that an officer has caused an ultra vires act, will automatically lead to personal liability.

## CONCLUSION

The imprimatur of a jury is important in a case such as this, even if said jury ultimately reaches the same conclusion as the district court. We therefore REVERSE the district court's grant of summary judgment holding the Appellants jointly and severally liable to SBA for $307,711.50 and REMAND for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

11