**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**October 21, 2003**

**Charles R. Fulbruge III**
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 03-50107

---

Southwestern Bell Telephone Co.

Plaintiff-Counter-Defendant-Appellant,

VERSUS

Public Utilities Commission of Texas; Paul Hudson, Commissioner of the Public Utility Commission of Texas; Rebecca Armendariz Klein, Chairman of the Public Utility Commission of Texas; Julie Parsley, Commissioner of the Public Utility Commission of Texas,

Defendants-Appellees,

and

AT&T Communications of Texas, LP, AT&T Communications of Texas, Inc., also known as AT&T Communications; TCG Dallas; Teleport Communications of Houston, Inc.,

Defendants-Counter-Claimants-Appellees.

---

Appeal from the United States District Court
For the Western District of Texas

---

Before BARKSDALE, DeMOSS, and BENAVIDES, Circuit Judges

DeMOSS, Circuit Judge:

Plaintiff-Appellant and Counter-Defendant, Southwestern Bell Telephone Company ("Southwestern Bell") prevailed over AT&T

Communications of Texas, L.P., TCG Dallas, and Teleport Communications Houston, Inc. (collectively "AT&T"), Defendants and Counter-Plaintiffs and Cross-Appellees, in an arbitration conducted by the Public Utility Commission of Texas ("PUC") and the Commissioners of the PUC, Defendants and Cross-Appellees. The arbitration ruling determined that AT&T, and not Southwestern Bell, was responsible for paying the increased interconnection costs resulting from Southwestern Bell having to carry traffic outside a particular calling area to a distant point of interconnection ("POI") selected by AT&T.[1] Both Southwestern Bell and AT&T appealed the PUC order in district court under the Federal Telecommunications Act. AT&T moved for summary judgment on the POI issue. The district court granted final summary judgment for AT&T, reversing the PUC order and remanding the case. Southwestern Bell now appeals.

## BACKGROUND AND PROCEDURAL HISTORY

Prior to the passage of the Federal Telecommunications Act ("the Act"), Southwestern Bell held a monopoly over the telecommunications market in most of Texas and is considered an incumbent local exchange carrier ("ILEC"). AT&T is a new entrant

---

[1] A point of interconnection, or POI, is a point designated for the exchange of traffic between two telephone carriers. It is also the point where a carrier's financial responsibility for providing facilities ends and reciprocal compensation for completing the other carrier's traffic begins.

2

into the local telephone market in Texas and is termed a competitive local exchange carrier ("CLEC"). The Act provides for integration of competitive carriers with the existing networks of incumbent carriers. The Act further provides for the voluntary negotiation of interconnection agreements between ILECs and CLECs. If the incumbents and competitive carriers cannot agree on terms for interconnecting their networks, the Act provides for compulsory arbitration of any disputed terms and conditions by the state commission empowered to regulate intrastate telecommunications. 47 U.S.C. § 252(b) (2001). The relevant state commission in Texas is the PUC. Tex. Util. Code § 52.002 (Vernon 1998).

On March 23, 2000, Southwestern Bell sought arbitration by the PUC of all unresolved issues related to the negotiation of a successor interconnection agreement with AT&T. After full discovery, briefing, and a hearing conducted before PUC arbitrators, an arbitration award was submitted to the PUC for approval. In March 2001, the PUC issued its decision approving the rulings of the arbitrators.

In its order, the PUC concluded that AT&T could select the location of its POI on Southwestern Bell's network without cost considerations, as long as the location was technically feasible. However, the PUC decided that once technical feasibility was established, costs could be taken into account in determining the amount AT&T would have to pay Southwestern Bell for its proposed

3

interconnection plan.[2]  The PUC noted that § 252(c)(2)(D) of the Act requires ILECs to provide interconnection "at rates, terms, and conditions that are just, reasonable, and nondiscriminatory." Therefore, the PUC held that pursuant to § 252(c)(2)(D), "the interconnection rates to be paid by AT&T to recover the additional costs incurred by [Southwestern Bell] in transporting the call to the AT&T designated POI should be cost-based." Petition of Southwestern Bell Tel. Co. for Arbitration with AT&T Comm. of Tex., L.P., TCG Dallas, and Teleport Comm., Inc. Pursuant to Section 252(b)(1) of the Federal Telecommunications Act of 1996, Pub. Util. Comm'n of Texas Docket No. 22315, at 6.  The PUC based its holding on the rationale that "requiring the cost causer to absorb additional costs incurred as a result of the siting of the POI . . . is sound public policy," concluding that "[p]arties are therefore encouraged to facilitate agreements that are also 'economically feasible' once technical feasibility has been established." Id.

Southwestern Bell filed a complaint in the United States District Court for the Western District of Texas, pursuant to 47 U.S.C. § 252(e)(6), appealing several of the PUC's decisions. In response, AT&T filed counterclaims and cross-claims, including

---

[2] The PUC determined that an ILEC incurs transport costs as part of providing interconnection within its network.  In an effort to identify a benchmark for computing appropriate reciprocal compensation rates, the PUC established a de minimis traffic threshold of 14 miles as a standard distance for local transport, noting that an alternate compensation mechanism would need to be established to address local traffic sent to a distant POI located beyond the 14-mile limit.

4

a motion for summary judgment on the POI issue. Among AT&T's claims was its contention that the PUC violated the Federal Communications Commission's ("FCC") "reciprocal compensation" regulation by allowing Southwestern Bell to charge AT&T when Southwestern Bell customers call AT&T customers (but not vice versa) if the POI selected by AT&T is outside Southwestern Bell's local calling area.[3]

On July 17, 2002, approximately four months prior to the hearing in the district court presenting AT&T's motion for summary judgment, the FCC published an arbitration decision in <u>Petition of WorldCom, Inc., et al., Pursuant to § 252(e)(5) of the Communications Act for Preemption of the Jurisdiction of the Virginia State Corporation Comm'n</u>, 2002 WL 1576912 (2002), ("<u>WorldCom</u>") in which the FCC, on similar facts and under its current regulations, confirmed that: 1) a CLEC is permitted to choose to interconnect with ILECs at any technically feasible point, including a single-LATA-POI;[4] and, 2) an ILEC is prohibited

---

[3] Specifically, AT&T argued that the FCC's "reciprocal compensation" regulation, 47 C.F.R. § 51.703(b), required each LEC to carry the traffic that originates within its network to the POI, without receiving any compensation from the other LEC for that portion of the traffic's travel. After handing off the traffic to the other carrier at the POI, the originating LEC must, under the reciprocal compensation rules, pay the other carrier for the transport and termination (<u>i.e.</u>, call completion) of the traffic picked up at the POI.

[4] A Local Access and Transport Area ("LATA") is a contiguous geographic area for the provision and administration of communications service, created by federal consent decrees opening long-distance to competition in the 1980s. 47 U.S.C. § 153(25); 16

from imposing charges for delivering its local traffic to a POI outside the ILEC's local calling area. After the release of the WorldCom decision, the PUC confessed that it erred on the issue of POI cost calculation and requested that the district court remand the issue back to the PUC for reconsideration in light of the FCC's decision. The district court subsequently granted AT&T's motion for summary judgment, declaring that the Act gives AT&T the right to select any technically feasible location for a POI. Furthermore, the district court concluded that the PUC's order allowing Southwestern Bell to charge AT&T for delivering Southwestern Bell-originated traffic to the POI when the POI is outside Southwestern Bell's local calling area violates FCC regulations.

On appeal, Southwestern Bell argues that the district court erred in declaring unlawful the PUC's decision. Although Southwestern Bell does not dispute the Act's requirement that an ILEC must provide interconnection within its network at any technically feasible point, it insists that the Act requires that an ILEC recover "just and reasonable" rates for interconnecting

_____

Tex. Admin. Code § 26.5(116). Most states have more than one LATA, and Texas has more than a dozen. In Texas, each LATA is named for its most prominent city, e.g., the Austin LATA, the Houston LATA, etc. Therefore, a LATA is larger than, but not synonymous with, an "exchange area." The latter is a geographic area, usually comprising of a city and its environs, in which calls therein are treated as "local." 16 Tex. Admin. Code § 26.5(79),(117). An ILEC's "local calling area" can include more than one exchange area, such as in major metropolitan areas with "expanded local-calling scopes." Id. § 26.5(117),(118).

6

CLECs to its network. Specifically, Southwestern Bell contends that the PUC ruling properly approved the transport costs as "interconnection terms" under 47 U.S.C. §§ 251(c)(2) and 252(d)(1), rather than as "reciprocal compensation" under §§ 251(b)(5) and 252(d)(2). Southwestern Bell argues that the PUC has discretion under §§ 251(c)(2)(D) and 252(d)(1) of the Act to set rates, terms, and conditions of interconnection that are just, reasonable, and non-discriminatory. Otherwise, according to Southwestern Bell, the effect of the district court's order allows AT&T to make free and beneficial use of Southwestern Bell's physical network by having a single, remote POI whereas Southwestern Bell bears the burden of transporting its own traffic out to the POI selected by AT&T.

AT&T argues that an ILEC, such as Southwestern Bell, without consideration of economics, must allow a CLEC, like AT&T, to interconnect at any technically feasible point pursuant to 47 C.F.R. § 51.305(a). Moreover, AT&T contends that allowing Southwestern Bell to impose charges for hauling its originating traffic to the POI selected by AT&T simply because the POI is outside Southwestern Bell's local calling area is expressly precluded by the FCC's "reciprocal compensation rules" pursuant to 47 C.F.R. § 51.703. Specifically, § 51.703(b) prohibits one LEC from charging another carrier for transporting telecommunications traffic that originates on the LEC's network. AT&T contends that the PUC erred in considering the rates associated with transport costs as "interconnection terms" rather than as "reciprocal

7

compensation."  AT&T also argues that the PUC's ruling is an impediment to the pro-competitive purposes of the Act.  Finally, AT&T asserts that by granting AT&T's motion for summary judgment and remanding the case to the PUC, the district court properly invalidated the PUC's order as being contrary to binding FCC precedent, and thus an erroneous application of federal law.

## DISCUSSION

We review a district court's grant of summary judgment <u>de novo</u>, applying the same standards as the district court. <u>Tango Transp. v. Healthcare Fin. Servs. LLC</u>, 322 F.3d 888, 890 (5th Cir. 2003).  Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

To satisfy its pro-competitive purpose, the Act imposes on an ILEC and CLEC a duty to negotiate the terms and conditions of interconnection agreements in good faith. 47 U.S.C. § 251(c)(1). In furtherance of this objective, an ILEC must provide a CLEC interconnection within its network at "any technically feasible point." <u>Id</u>. § 251(c)(2); <u>see</u> <u>also</u> <u>AT&T v. Iowa Utils. Bd.</u>, 525 U.S. 366, 371-72 (1999).  The FCC has determined that "technical feasibility" does not include consideration of economic, accounting, or billing concerns. 47 C.F.R. §§ 51.5, 51.305(a), 51.321.  Further, the FCC has stated that § 251(c)(2) "allows

8

competing carriers to choose the most efficient points at which to exchange traffic with incumbent LECs, thereby lowering the competing carriers' costs of, among other things, transport and termination of traffic." First Report and Order, Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, 1996 WL 452885 (1996), modified, 1996 WL 557116 (1996), partially vacated, Iowa Utils. Bd. v. FCC, 120 F.3d 753 (8th Cir. 1997), rev'd in part, AT&T v. Iowa Utils. Bd., 525 U.S. 366 (1999). Recognizing that ILEC networks were not designed to accommodate third-party interconnection, the FCC notes that ILECs are nevertheless required "to adapt their facilities to interconnection or use by other carriers," and "must accept the novel use of, and modification to, its network facilities to accommodate the interconnector." Id. ¶ 202.

Section 251 of the Act, entitled "Interconnection," imposes on ILECs "[t]he duty to provide, for the facilities and equipment of any requesting telecommunications carrier, interconnection with the local exchange carrier's network . . . at any technically feasible point within the carrier's network . . . on rates, terms, and conditions that are just, reasonable, and nondiscriminatory." Id. § 251(c)(2). Meanwhile, § 51.703 of the FCC regulations, entitled "Reciprocal Compensation for Transport and Termination of Telecommunications Traffic," prohibits an ILEC from assessing "charges on any other telecommunications carrier for telecommunications traffic that originates on the [ILEC]'s

9

network."

Section 252(b)(1) of the Act expressly provides that a state commission (i.e., the PUC) is empowered to arbitrate any "open issues" concerning an interconnection agreement between telecommunications carriers. The district court found that the PUC, acting pursuant to this authority, issued an arbitration award it later determined was inconsistent with FCC rules. The district court determined that the transport costs imposed on AT&T by the PUC were charges related to reciprocal compensation under § 51.703(b), rather than interconnection terms under § 251(c)(2), and therefore, in violation of FCC regulations. The district court noted that the FCC reciprocal compensation regulations are quite specific in prohibiting Southwestern Bell from charging AT&T for "local" traffic originating on Southwestern Bell's network, despite the fact that the PUC had previously authorized Southwestern Bell to do so. The district court also found it was not an insignificant factor that the PUC, in light of the FCC's decision in WorldCom, urged the district court to ignore the Commission's original order as being erroneous and remand the case back to the PUC. The district court concluded that the PUC order did not comply with the current FCC rules and remanded the PUC's order back to the PUC.

In light of the recent FCC decision in WorldCom, the PUC's subsequent confession of error, and its own factual findings, the district court properly determined that the transport costs imposed

10

on AT&T by Southwestern Bell are governed by the FCC's "reciprocal compensation" rules pursuant to § 51.703, rather than by "interconnection terms" under §§ 251(c)(2)(D) and 252(d)(1) of the Act. Therefore, the district court correctly remanded the case back to the PUC to reform the interconnection agreement between Southwestern Bell and AT&T in accordance with this determination.

<u>**CONCLUSION**</u>

Having carefully reviewed the record of this case, the parties' respective briefing and arguments, and for the reasons set forth above, we affirm the district court's grant of summary judgment and remand of the case to the PUC to approve an interconnection agreement consistent with the opinion of the district court.

AFFIRMED.